A. JEROME MOORE, REGINA H. MEREDITH, ANTON J. HOLLENDONNER, JOSEPHINE A. MATHEY AND NANCY SCHLUTER, PLAINTIFFS-RESPONDENTS, v. THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MERCER, *ET AL.*, DEFENDANTS-APPELLANTS.

Argued October 23, 1962—Decided December 18, 1962.

*Mr. Edward B. Meredith* argued the cause for plaintiffs-respondents.

*Mr. Joseph S. Bash* argued the cause for defendants-appellants.

*Mr. William L. Boyan,* Deputy Attorney General, argued the cause for intervenor State of New Jersey (*Mr. Arthur J. Sills,* Attorney General, attorney).

The opinion of the court was delivered by

HANEMAN, J. All of the plaintiffs are taxpayers and citizens of Mercer County. At the time this action was instituted, two of them were Republican candidates for the office of Freeholder of Mercer County at the election to be held in November 1962. The individual defendants were elected or appointed officials of the Board of Chosen Freeholders of Mercer County (Board). Two of them were Democratic candidates for re-election as Freeholders at the same election.

On or about June 7, 1962, plaintiffs filed a complaint in the Chancery Division seeking a declaratory judgment and injunctive relief. The gravamen of the complaint was defendants' alleged refusal to permit them to photocopy various county records. On June 29, 1962, before filing answer, defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted and for a number of other specified grounds. After a hearing, the trial judge denied the motion. Plaintiffs then served notice on one of the defendants for the taking of his deposition. On July 10, subsequent to filing an answer and prior to the return date for the taking of the deposition, defendants moved for a summary judgment. On July 26 the motion was argued, and on August 3 the trial court granted defendants' motion, on the ground that there was no right to obtain a photocopy by any

means. It relied on *Evening Journal Ass'n v. MacPhail*, 45 N. J. *Super.* 184 (*Law Div.* 1957). See *Moore v. Board of Freeholders of Mercer County*, 76 N. J. *Super.* 42 (*Ch. Div.* 1962). Thereafter, plaintiffs appealed to the Appellate Division. Plaintiffs filed their brief, and on September 11 moved to advance the case on the argument list. On September 24 the Appellate Division granted the motion and directed defendants to file briefs by October 5, assigning October 9 as the argument date. After argument the Appellate Division orally reversed the judgment dismissing the complaint. On October 11 a written opinion was filed which granted permission to plaintiffs to photocopy county records and particularized the reasoning upon which the reversal of the trial court was based. *Moore v. Bd. of Freeholders of Mercer County*, 76 N. J. *Super.* 396 (*App. Div.* 1962).

Defendants petitioned this court for certification and a stay pending final determination of the cause. The Attorney General filed a petition seeking leave for the State of New Jersey to intervene and join in the dual application of defendants. This court granted the petition for certification and for leave to intervene. Because of the imminence of the general election on November 7, 1962, and the consequent public nature and interest in the relief sought by plaintiffs, this court directed that, pending the outcome of the appeal, plaintiffs be permitted to use their photocopy machine and volunteer workers to photostat a particularized list of records. However, we granted a stay as to any other photocopying with plaintiffs' own equipment and provided that plaintiffs should have the right to obtain such copies of additional records from defendants at a reasonable cost. This disposition satisfied the urgency of the situation. Thereafter, the appeal was briefed and argued and we now set forth our views on the questions raised.

Defendants admit that the plaintiffs are taxpayers and citizens of Mercer County and that the instruments sought to be copied are records which plaintiffs have the right to inspect and handcopy, so long as the inspection and copying take

place during ordinary business hours, under the supervision of a county representative, and are not an unreasonable interference with the conduct of county business. However, defendants deny that plaintiffs have any right to *personally* photocopy the records, and have offered to furnish them with photocopies which defendants would prepare at a reasonable cost.

The trial court correctly stated the issue to be whether plaintiffs had the right to photocopy with their own machine. The trial court, however, did not reach that question because it followed *Evening Journal Ass'n v. MacPhail, supra,* which held that a photocopy could not in any event be had. We think that case was erroneously decided and hence the issue as initially stated by the trial court must be decided. Therefore, the single issue confronting this court is whether the plaintiffs have a right to photocopy the above referred to records with their own equipment.

Defendants argue that the common law right to copy public records contemplates the individual's right to hand-copy but that his right to photocopy is not recognized under the common law, and in the absence of a permissive statute, fails to exist.

To buttress their position, defendants advert to four bills which were introduced in the Legislature: *Senate No.* 64 (1960); *Assembly No.* 358 (1960); *Assembly No.* 536 (1961), and *Assembly No.* 560 (1962) which would have accorded a citizen, *inter alia,* the right to make photocopies of public records. They reason that the introduction of these measures, coupled with the arguments which they suggest were advanced in opposition to their passage, reveals that the bills were generally considered to create a new right to photocopy and consequently broadened the scope of the common law. They conclude that in light of the noted objections, the failure of the Legislature to adopt these bills signified a determination to forestall an extension of that right. Such rationalization is erroneous. An examination of the context of the bills and the statements of purpose appended to them reveals

that the Legislature was primarily concerned with an expansion of the right to examine sought to be advanced by broadening the definition of public records. Only incidental thereto was provision made for photocopying. Furthermore, we cannot conclude from the legislative record what motivation was behind the nonadoption thereof. The history of these proposed laws lends no aid to our deliberations. See *Hilton Acres v. Klein*, 64 *N. J. Super*. 281, 294 (*App. Div.* 1960), modified 35 *N. J.* 570 (1961).

The distinction between manual copying and machine photocopying inheres solely in the method of accomplishing the common law right to obtain a copy. It bears no relationship to the existence of that right itself. There can be no doubt of plaintiffs' right to obtain photocopies of these records.

██ There is, however, one important distinction between the accomplishment of this right with a pen or pencil or with a machine. To say that the latter is merely a more modern method of exercising the right to obtain a copy is an oversimplification. The employment of a mechanical contrivance to produce a copy could subject the document to the possibility of spoilage or destruction during the process of copying, a danger absent in transcribing the contents of a document by hand. It is common knowledge that there are many pieces of equipment capable of producing copies. To permit copying with any machine a particular individual may propose to use, without prior tests as to its capability, would subject the record to the hazard of damage. Although the right to inspect is of vital importance, it is of equal public importance that the original record be not mutilated. Public officials should have the opportunity to select equipment which will assure that the records will not be damaged, and to make suitable arrangements for the availability of such equipment. Hence the result of producing a photocopy can best be obtained by requiring the proper official to furnish such copy at a reasonable cost, rather than by permitting the applicant to make a copy with his own machine.

Plaintiffs urge, however, that if public officials may charge a unit rate per page, conceivably they could fix a rate which would effectively impair the right of the public to know. We agree that where the inquiry has the purpose which plaintiffs profess and a considerable number of documents is involved, the charge per page which would be reasonable if but a few pages were involved may well, as here, be unreasonable. Where the public right to know would thus be impaired the public official should calculate his charge on the basis of actual costs. Ordinarily there should be no charge for labor. If plaintiffs or others so situated believe the charge to be excessive the matter could be determined by appropriate proceedings. The present matter is therefore remanded to the trial court to the end that the Assignment Judge may deal with any problems which may arise in connection with inspection and photocopying, including the question of costs.

Modified without costs.

*For modification*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.