OPINION OF THE COURT
Thomas F. McGowan, J.
Petitioner brings this action pursuant to article 6 of the Public Officers Law, otherwise known as the Freedom of Information Law. He seeks, first, a complete set of Cattaraugus County tax maps at the actual cost of reproduction. The county is willing to provide petitioner with copies of the maps in question but only for a fee of $4 per map ($4.50 per map if mailed), a figure concededly well above actual photocopying costs. Secondly, petitioner requests a copy of the county’s Assessment Roll and Levy Module (A.R.L.M.) computer tapes which contain information relating to each parcel of land in Cattaraugus County, in- *887 eluding among other things, the name and mailing address of each property owner. The county has refused to provide a copy of such tapes.
Petitioner does business as Peter’s Quality Tree Service. He is attempting to locate “rural tracts of land that might be suitable for forest land or timbering purposes”. He needs the copies of tax maps and computer tapes so that he may “conveniently identify and locate” such acreage. By a writing dated March 19, 1980, petitioner formally requested a copy of the two-reel set of tax roll tapes, at a copying cost of $12 per roll, and two complete sets of tax maps; with 750 maps per set, at a total cost of $375. Such request was denied on March 25, 1980 by Shirley Buelow, Records Access Officer for the Cattaraugus County Real Property Tax Service. Such denial was reviewed by Bernice Boyer, Director of the County Real Property Tax Service and denied by letter dated April 10, 1980. The reason for the denial of the computer tape copies was that the tapes were an exempt record pursuant to subdivision 2 of sections 87 and 89 of the Public Officers Law and sections 5 and 8 of Act 337 of 1978 of the Cattaraugus County Legislature. Mr. Szikszay was further informed that copies of tax tapes were available but only at a charge of $4 per map.
TAX MAP COPYING CHARGES
Respondents contend that the tax map copying charge of $4 per map, established by a committee of the Cattaraugus County Legislature, is proper. At issue is whether and to what extent the Freedom of Information Law applies to such maps and, if so, whether the fee set by the county complies with the law.
Subdivision 4 of section 86 of the Public Officers Law provides as follows: “ ‘Record’ means any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes.”
*888 The county argues that, despite this broad definition, tax maps are not covered by the Freedom of Information Law and that, therefore, the fee provisions contained therein do not apply. It argues that public access has been granted to these maps from the time they were created in 1973, and that since the purpose of the statute was to create access to records which were not sold or otherwise already available to the public, tax maps are not governed by its provisions.
The Freedom of Information Law does many things besides assure that certain otherwise undisclosed governmental records are made public. For instance, the statute requires that an agency maintain and presumably make available to the public a current list of all records in its possession (Public Officers Law, § 87, subd 3, par [c]), that the agency specify the times and places such records are available (Public Officers Law, § 87, subd 1, par [b], cl i) and the persons from whom the records may be obtained (Public Officers Law, § 87, subd 1, par [b], cl ii), and it requires that the fees set by the agency not exceed a certain amount. Furthermore, had the intent of the Legislature been to include only those records not previously disclosed, the definition of record, instead of being so all encompassing, could have so provided.
As it is, records are exempt from the fee schedule contained in the Freedom of Information Law if “a different fee is otherwise prescribed by law” (Public Officers Law, § 87, subd 1, par [b], cl iii). For example, copying fees of a county clerk are set forth in CPLR 8021; the Freedom of Information Law does not apply. Thus, county tax maps are covered by the statute, and the county may charge the greater of either actual cost or 25 cents per copy, unless a different fee is prescribed by law (Public Officers Law, § 87, subd 1, par [b], cl iii; see, also, 21 NYCRR 1401.8; Cattaraugus County Act 337-1978, § 6).
The authority cited by the county for its tax map copying fee of $4 per map is the March 6, 1974 action of the Equalization Committee of the Cattaraugus County Legislature. Was this action such as to bring the $4 county copying fee within the “otherwise prescribed by law” exception? In Brinckeroff v Bostwick (99 NY 185), the Court *889 of Appeals interpreted the phrase “prescribed by law” as meaning prescribed by statute rather than by case law. Subdivision 6 of section 2 of the Municipal Home Rule Law defines “law” as a “state statute, charter or local law.” Subdivision 9 of section 2 of the above statute states that a local law “shall not mean or include an ordinance, resolution or other similar act of the legislative body or of any other board or body.” Subdivision 1 of section 20 provides that “No local law shall be passed except by at least the majority affirmative vote of the total voting power of the legislative body.” Thus, had the county enacted the $4 per map copying charge by local law, pursuant to a majority vote of its legislature, this may have been acceptable. The resolution of the Equalization Committee of the Cattaraugus County Legislature was not, however, a legislative act. It was, rather, a ministerial one (see City of Troy Unit of Rensselaer County Ch. of Civ. Serv. Employees Assn, v City of Troy, 36 AD2d 145; 13 NY Jur, Counties, § 79) and not the type of action included within the “prescribed by law” exception to the State statute.
The only statute pertaining to copies of maps on file in county offices, apart from the somewhat outdated section 208 of the County Law, is CPLR 8021 (subd [a], par 8). That provision states that the fees charged by the county clerk for copying and mailing any map shall be “such fees as may be fixed by the county clerk subject to review by the supreme court.” Copies of tax maps must be filed in the office of the county clerk (Real Property Tax Law, § 1534, subd 4); a request for a copy of a tax map filed in that office, therefore, is governed by CPLR 8021 (subd [a], par 8). On the other hand, because no specific provision governs copies of tax maps filed in the county office of the director of real property tax services, the Freedom of Information Law must apply. This inconsistency was created in part by the repeal of section 66 of the Public Officers Law (repealed by L 1974, ch 578, eff Sept. 1, 1974), which appeared to peg copying charges to fees allowable to a county clerk. Since the Legislature created this discrepancy, however, it is up to the Legislature to resolve it.
*890 Since, as noted above, there is no fee “otherwise prescribed by law”, respondents may charge only the actual cost of reproduction, excluding operator salaries (21 NYCRR 1401.8 [c] [3]). Paragraph 14 of the affidavit of Cattaraugus County’s Director of Real Property Tax Services, Bernice Boyer, breaks down the map copying cost as 70 cents per sheet copier expense, 40 cents per sheet paper expense, 5 cents per sheet activator cost, and $2.72 “map maintenance expense”. The county argues that the latter component is a proper charge and is necessary to defray the county’s cost of map maintenance. On the other hand, subdivision 3 of section 1534 of the Real Property Tax Law provides in pertinent part that “The expense of maintaining such tax maps in current condition shall be a county charge and shall be levied ad valorem upon all taxable property in the county.” Subdivision 1 of section 1534 of the Real Property Tax Law further provides that counties have a duty to maintain current tax maps (see, also, Real Property Tax Law, § 568, subd 3). The maintenance of tax maps in current condition primarily benefits the taxing jurisdictions within the county. It also, of course, benefits any person who inspects the maps and any person who inspects and requests copies. It is unreasonable, even apart from the statute, to require the person seeking copies to bear a share of the map maintenance expense. Cattaraugus County, therefore, has no authority under the Real Property Tax Law to include, in its charge for copying tax maps, a levy for map maintenance expense. This expense would be improper whether included as a charge by the county clerk pursuant to CPLR 8021 (subd [a], par 8) or by the director of real property tax services under the Freedom of Information Law.
The copying expenses claimed by the county, excluding map maintenance expense, total $1.15 per tax map copy. Petitioner argues, however, that the actual cost of reproduction is 25 cents per map or less. He bases his estimate on economies of scale, citing retail prices ranging from $1.40 for one map to an average of 64 cents per map for a quantity of 1,138 maps. He argues that the actual cost is much less than even the retail prices.
*891 Actual reproduction cost is defined in section 1401.8 (subd [c], par [3]) of title 21 of the New York Code of Rules and Regulations as “average unit cost for copying a record, excluding fixed costs of the agency such as operator salaries.” I interpret this phrase to require the agency to average out the copying costs for each type of record not covered by the 25 cents per page fee based on its experience over a period of time. Undoubtedly, where the number of copies per order increases for a particular record over a period of time, the economies of scale will result in a lower unit cost over that time period. However, the regulation does not require the agency to calculate the actual cost of each individual order, resulting in the cost per unit fluctuating from one order to the next as the quantity of each order increases or decreases. Unlike the retail copier, a governmental agency has no incentive to encourage bulk orders, especially where it is prohibited from charging for the labor involved. Thus, based on petitioner’s own figures for single order tax map copies at retail ($1.40 and $2 per map), it appears that the county cost of $1.15 per map (excluding map maintenance expense) as set forth in the affidavit of Bernice Boyer is reasonable.
COMPUTER TAPE COPIES
It is respondents’ position that the computer tape copies sought by petitioner are exempt from disclosure under the Freedom of Information Law. It is clear from the papers presented that petitioner, through his business, Peter’s Quality Tree Service, seeks these tapes for commercial purposes — to aid him in finding and exploiting timber land in Cattaraugus County. Respondents contend that providing petitioner with the tapes amounts to an “unwarranted invasion of personal privacy” (Public Officers Law, § 87, subd 2, par [b]) in that it involves the “sale or release of lists of names and addresses for commercial or fund-raising purposes”, (Public Officers Law, § 89, subd 2, par [b], cl iii). Respondents allege, as well, that a further invasion of privacy will result because much of the land in Cattaraugus County is owned by nonresidents, that such information is easily discernible by reviewing *892 the billing addresses contained on the computer tapes, and that this information would be useful to someone interested in vandalizing or burglarizing the real property involved.
As noted in Matter of Miracle Mile Assoc, v Yudelson (68 AD2d 176, 181), “The legislative purpose behind the enactment of New York’s Freedom of Information Law is the ‘people’s right to know’ [citations omitted].” The Court of Appeals stated in Matter of Westchester Rockland Newspapers v Kimball (50 NY2d 575, 580): “As presently constituted, article 6 declares all agency records open to the public unless they fall within one of [the] eight categories of exemptions (Public Officers law, § 87, subd 2). Thus, in contrast to earlier versions of the statute, the burden of demonstrating that the material requested is exempt now falls squarely on the shoulders of the one who asserts it [citation omitted]. Put another way, in the absence of specific statutory protection for the requested material, the Freedom of Information Law compels disclosure, not concealment.” The law is liberally construed to allow maximum access to documents, and the statutory exemptions are narrowly construed (Matter of Miracle Mile Assoc, v Yudelson, supra).
The records in question are county assessment rolls in computer tape format. An assessment roll is a public record (Real Property Tax Law, § 516, subd 2; General Municipal Law, § 51; County Law, § 208, subd 4). It must contain the name and mailing or billing address of the owner of the parcel (Real Property Tax Law, §§ 502, 504; 9 NYCRR 190-1.2 [b] [1]). Such records are open to public inspection and copying except as otherwise provided by law (General Municipal Law, § 51; County Law, § 208, subd 4). Even prior to the enactment of the Freedom of Information Law, and under its predecessor, section 66 of the Public Officers Law (repealed by L 1974, ch 578) assessment rolls and related records were treated as public records, open to public inspection and copying (Matter of Sanchez v Papontas, 32 AD2d 948; Matter of Sears, Roebuck & Co. v Hoyt, 202 Misc 43; 23 Opns St Comp, 1967, p 596).
*893 The Freedom of Information Law limits access to records where disclosure would constitute an “unwarranted invasion of personal privacy” (Public Officers Law, § 87, subd 2, par [b]; § 89, subd 2, par [b], cl iii). In view of the history of public access to assessment records, and the continued availability of such records to public inspection, whatever invasion of privacy may result by providing copies of A.R.L.M. computer tapes to petitioner would appear to be permissible rather than “unwarranted” (cf. Advisory Opns of Committee on Public Access to Records, June 12, 1979, FOIL-AO-1164). In addition, considering the legislative purpose behind the Freedom of Information Law, it would be anomalous to permit the statute to be used as a shield by government to prevent disclosure. In this regard, subdivision 5 of section 89 of the Public Officers Law specifically provides: “Nothing in this article shall be construed to limit or abridge any otherwise available right of access at law or in equity of any party to records.” (See, also, 21 NYCRR 1401.1 [d]; Matter of St. Joseph’s Hosp. Health Center v Axelrod, 74 AD2d 698; Orange & Rockland Utilities v Town of Clarkstown, 64 AD2d 919; City of New York v BusTop Shelters, 104 Misc 2d 702.)
It should be noted in conjunction with the above that cases dealing with the question of government disclosure of lists of names and addresses invariably involve instances where the names and addresses sought were not public information prior to the request (see Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575; Matter of New York Teachers Pension Assn, v Teachers’ Retirement System of City of N. Y., 71 AD2d 250; Wine Hobby USA v United States Internal Revenue Serv., 502 F2d 133; Disabled Officer’s Assn, v Rumsfeld, 428 F Supp 454; but cf. Matter of Person-Wolinsky Assoc, v Nyquist, 84 Misc 2d 930). Here, however, the records in question can be viewed by any person, and presumably copies of portions obtained, simply by walking into the appropriate county, city, or town office. It appears that petitioner could obtain the information he seeks if he wanted to spend the time to go through the records manually and copy the necessary information. Therefore, the *894 balancing of interests, otherwise required, between the right of individual privacy on the one hand and the public interest in dissemination of information on the other (see Matter of New York Teachers Pension Assn, v Teachers’ Retirement System of City of N. Y., supra) need not be undertaken (but see Matter of Westchester Rockland Newspapers v Kimball, supra, p 580, n 2).
Assessment records are public information pursuant to other provisions of law and have been for some time. The form of the records and petitioner’s purpose in seeking them do not alter their public character or petitioner’s concomitant right to inspect and copy. It is therefore improper for respondent to deny petitioner’s request for copies of the county assessment rolls in computer tape format.
CONCLUSION
Accordingly, the petition is granted to the extent of requiring respondents to make copies of tax maps available to petitioner at a cost not to exceed $1.15 per map copy and requiring respondents to make A.R.L.M. computer tapes available to petitioner at the actual cost of reproduction as stipulated by the parties.