ASSOCIATED TAX SERVICE, INC.

V.

JOSEPH T. FITZPATRICK, TREASURER, CITY OF NORFOLK

Record No. 850139

September 23, 1988

Present: All the Justices

182

*Vann H. Lefcoe (William F. Roeder, Jr.; Livesay & Lefcoe, Ltd.; Roeder, Durrette & Davenport, P.C.,* on briefs), for appellant.

*George H. Heilig, Jr. (Heilig, McKenry and Fraim,* on brief), for appellant.

THOMAS, J., delivered the opinion of the Court.

In this appeal we decide whether the Virginia Freedom of Information Act, Code §§ 2.1-340 et seq. (the Act), required the production of certain real estate tax information requested from Joseph T. Fitzpatrick, Treasurer, City of Norfolk (the Treasurer) and whether the entity which made the request was entitled to recover reasonable legal fees incurred in its efforts to secure the information. The trial court ruled that production was not required and that legal fees could not be recovered. We reverse.

On July 24, 1984, Associated Tax Services, Inc. (ATS), requested in writing, pursuant to the Act, that the Treasurer produce the 1985 Land Books Master Record for the City of Norfolk (the Master Record) and all related information necessary to utilize the Master Record. The Master Record is a computer disk file which contains the following information:

1. deed book and page number of the most recent conveyance
2. consideration paid for the conveyance
3. date of the conveyance
4. assessed value of improvements
5. assessed value of the land
6. total assessed value
7. total annual tax
8. quarterly tax amounts
9. dates of payments of quarterly taxes
10. owner's name
11. billing address
12. legal description of the property
13. street address of the property, if any
14. treasurer's account number
15. treasurer's tax bill number
16. zoning classification

Although the Master Record is not physically located in the Treasurer's office, it is subject to his control.

ATS is in the business of facilitating the payment of real estate taxes by its mortgage-lending clients. For a given mortgage lender, ATS compiles a list of that lender's customers, determines the individual amounts of real estate taxes owed by each customer and the total amount of real estate taxes owed by all customers. Then, for a fee, ATS provides this information to the mortgage

lender so that the total real estate tax bill can be paid to a locality with one check accompanied by a list setting forth the names of the individual landowners on whose behalf the taxes are being paid. In making its request for the Master Record, ATS stated that it would use the information "for the express purposes of creating tax lists to be used for payment of property accounts that will be paid by lenders we service under contract."

The Act provides that within fourteen days of receipt of a request, the public body to which the request is directed "shall . . . tender a written explanation as to why the records are not available to the requestor. Such explanation shall make specific reference to the applicable provisions of this chapter or other Code sections which make the requested records unavailable." Code § 2.1-342(a). The Treasurer received ATS' request on July 26, 1984, but did not respond within fourteen days, nor did he comply with the statutory procedure for extending the response time.* After another letter from ATS, followed by a letter from ATS' counsel, the Treasurer responded on August 24, 1984, as follows: "[I]t is my position that the material sought is not covered by the Act or in the alternative is exempt from the provisions of the Act requiring disclosure." At the time of these proceedings, the Act contained twenty-one categories of information not subject to disclosure pursuant to the Act; the Treasurer did not invoke any of these exclusions in his response. Further, in his response, the Treasurer did not specify any other Code provisions which would prevent disclosure of the requested information. In short, the Treasurer's response did not comport with the requirements of Code § 2.1-342.

On October 23, 1984, ATS filed a petition for writ of mandamus to compel the release of the Master Record and to secure the award of attorneys' fees. In his answer to the petition, the Treasurer asserted ten defenses which were as follows:

1. that the requested materials were not within his custody and control;
2. that the Treasurer is not a public body as defined in Code § 2.1-341;

---

* According to the Act, if he could not respond within fourteen days, he was required to give notice of that fact to the requestor. He then would have an additional ten days in which to respond. Code § 2.1-342(a).

3. that the policy of the Commonwealth is to protect the confidentiality of citizen tax records;
4. that pursuant to Code § 58-46 the requested documents must be kept secret;
5. that the costs and burden to the Treasurer to repeatedly produce such tapes is oppressive and not contemplated under the Act;
6. that pursuant to Code § 2.1-382, the Right to Privacy Act, the Treasurer would be required to notify every real estate taxpayer each time a request for the tape was received and the tape was produced;
7. that the Treasurer is not required by law to maintain and produce the Master Record;
8. that to grant such a request would set a bad precedent by allowing a wholesale production and distribution of the Master Record;
9. that ATS is only entitled to view the current land books available in the Treasurer's office; and
10. that a September 25, 1984 opinion from the Attorney General supports the proposition that magnetic tapes do not have to be produced if the same information is readily available in existing form.

A hearing was held on November 8, 1984. The Treasurer admitted at the hearing that ATS had agreed to pay the full cost of producing the requested information but that he had never quoted ATS a cost figure for reproducing the information. Although one of his defenses was that to release the information to ATS would set a precedent for wholesale production of the Master Record, the Treasurer admitted further that he had not received any other requests for this information. The Treasurer pointed out that ATS could get the same information from the Land Books which were physically maintained in the Treasurer's office. He admitted, however, that his office used the computer file because it took longer to process information using a manual approach.

An ATS representative also testified at the hearing. He admitted that his clients' customers in Norfolk were responsible for only one percent of the total real estate tax bill generated in the City. He testified further that his company was interested in only four of the sixteen items of information contained in the Master Record; the balance was ignored. He admitted that his company could

secure the needed information from the Land Books but testified that the computer information aided in processing, efficiency, and accuracy.

The trial court ruled in the Treasurer's favor. But it did not base its decision on any of the defenses asserted by the Treasurer. The trial court disposed of the case upon public policy grounds. It wrote in its final order that "the public policy of the State of Virginia, as expressed in the Virginia Freedom of Information Act, Section 2.1-340.1, does not require the disclosure of the magnetic tapes of the Norfolk City Land Book Master Record as requested by the petitioner." The trial court dismissed the suit with prejudice.

I

The policy of the Act is set forth in Code § 2.1-340.1, which provides as follows:

It is the purpose of the General Assembly by providing this chapter *to ensure to the people of this Commonwealth ready access to records in the custody of public officials* and free entry to meetings of public bodies wherein the business of the people is being conducted. This chapter recognizes that the affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is to be the beneficiary of any action taken at any level of government. To the end that the purposes of this chapter may be realized, it shall be liberally construed to promote an increased awareness by all persons of governmental activities and afford every opportunity to citizens to witness the operations of government. *Any exception or exemption from applicability shall be narrowly construed in order that no thing which should be public may be hidden from any person.*

(Emphasis added.) The trial court concluded from this provision that the motive for the request determined whether the government official had a duty to produce the requested information. In the trial court's view, only where the request was made with the purpose of monitoring the operations of government was it a valid request. Any request based on a citizen's desire to use information

for commercial purposes was deemed by the trial court to fall outside the scope of the statute.

■ There are several problems with the trial court's approach. First, the Act nowhere states that its provisions come into play only where a civic-minded request is made. As mentioned above, the Act contained twenty-one detailed exclusions not one of which was based on a public policy such as articulated by the trial court. The Act is simple and direct in its requirements. If the requested document is an "official record," Code § 2.1-341(b), which the Master Record is, then it "shall be open to inspection and copying" except "as otherwise specifically provided by law," Code § 2.1-342. The policy statement relied on by the trial court does not contain a specific exception to disclosure.

■ Further, the whole tenor of the policy statement, Code § 2.1-340.1, militates against the trial court's approach. The provision calls for "ready access," not limited access. Moreover, the provision states that even the enumerated exceptions and exemptions must be narrowly construed, while requiring that the disclosure provisions be liberally construed. We find it difficult to discern an implied exclusion from language which is designed to minimize the effect of explicitly stated exclusions.

■ In addition, the trial court's approach would turn the Act into a battleground for litigation instead of a straightforward device for the release to citizens of information created with tax dollars. This is so because every time a citizen requested information, the government could challenge the citizen's motivation. Even a citizen who professed a public purpose at the time of making a request might be challenged on the basis of having an ulterior commercial motivation. In our opinion, such a procedure was not contemplated or envisioned by the General Assembly when it enacted this statutory scheme.

■ We conclude in light of the statutory language that the purpose or motivation behind a request is irrelevant to a citizen's entitlement to requested information. The proper questions, arising from the language of the Act itself, concern the status of the requestor as a citizen of the Commonwealth, the status of the requested documents as official records, whether any exceptions apply either as listed in the Act or found in other Code provisions, and whether the requestor will pay the cost of production. The requestor's motivation nowhere comes into play. *See Forsham* v. *Califano*, 587 F.2d 1128, 1134 (D.C. Cir. 1978) (Federal Free-

dom of Information Act case in which the D.C. Circuit commented that "[t]he only claim ascertainable in this FOIA action is the right of any member of the public, motivated by whatever reasons. . . . Any showing of need or interest is irrelevant."), *aff'd sub nom. Forsham* v. *Harris*, 445 U.S. 169 (1980).

The Treasurer argues further that even if the public policy approach relied on by the trial court was in error, the trial court's decision should nevertheless be affirmed because both the Privacy Protection Act of 1976, Code §§ 2.1-377 et seq., and various provisions of Code § 58.1 concerning taxation prevent the disclosure of the requested information.

■ The Privacy Protection Act is concerned with the collection, maintenance, use, and dissemination of "personal information." However, the Treasurer's reliance upon that statute is totally misplaced. This is so because the definition of personal information, Code § 2.1-379(2), provides in pertinent part that the term does not "include real estate assessment information." Such information is precisely what is sought by ATS and is precisely what is contained in the Master Record.

■ The Treasurer's reliance upon Code § 58.1-3, which concerns the secrecy of tax information, is also misplaced. That code section contains four numbered exceptions, two of which are pertinent here. The secrecy provisions of the taxation code "shall not be applicable" to "[m]atters required by law to be entered on any public assessment roll or book" or to "[t]he sales price, date of construction, physical dimensions or characteristics of real property, or to any information required for building permits." Code § 58.1-3(A)(1) and (4). These two exceptions appear fully to cover the matters set forth in the Master Record. Thus, the Treasurer can take no solace from Code § 58.1-3.

In light of the foregoing, we hold that the trial court erred in denying ATS' petition for mandamus. ATS is entitled to copies of the materials it requested.

## II

We turn now to the question of attorneys' fees. Code § 2.1-346, which is part of the Act, provides in pertinent part as follows: "If the court finds the denial to be in violation of the provisions of this chapter, the court may award costs and reasonable attorney's fees to the petitioning citizen. Such costs and fees shall be paid by the public body in violation of this chapter."

ATS argues that it is entitled to attorneys' fees because the Treasurer responded late to the request for the Master Record, responded inadequately by failing to specify the bases for denying the request, and improperly denied the request. The Treasurer contends the trial court's decision to deny attorneys' fees was a matter of discretion and that absent a showing of abuse of discretion, this Court cannot reverse that decision.

In our opinion, the statutory language concerning attorneys' fees makes clear that fees may be awarded only if the trial court first finds that the denial of the request violated the statute. Here, the trial court concluded that the denial of the request did not violate the statute. Thus, based on its decision, the trial court could not have awarded fees. In this opinion, we have held that it was error to deny the request and that to do so violated the statute. Thus, the question of attorneys' fees and costs properly arises for the first time. We will, therefore, remand this portion of the case with instructions to the trial court to consider the issue of costs and attorneys' fees.

### III

For all the foregoing reasons, the judgment of the trial court will be reversed and the case remanded with instructions to the trial court to order the Treasurer to disclose the information requested by ATS in its petition for writ of mandamus and to consider the question of costs and attorneys' fees.

*Reversed and remanded.*