660 A.2d 1163

HIGG–A–RELLA, INC., T/A STATE INFORMATION SERVICE, BLAU APPRAISAL COMPANY, AND ROBERT D. BLAU, PLAINTIFFS–RESPONDENTS, v. COUNTY OF ESSEX, A POLITICAL SUBDIVISION OF THE STATE OF NEW JERSEY, BOARD OF TRUSTEES OF ESSEX COUNTY COLLEGE, TOWNSHIP OF CALDWELL, TOWNSHIP OF CEDAR GROVE, CITY OF EAST ORANGE, BOROUGH OF ESSEX FELLS, TOWNSHIP OF FAIR-

FIELD, TOWNSHIP OF GLEN RIDGE, TOWNSHIP OF IRVINGTON, TOWNSHIP OF MAPLEWOOD, TOWNSHIP OF MILLBURN, TOWNSHIP OF MONTCLAIR, CITY OF NEWARK, TOWNSHIP OF NORTH CALDWELL, TOWNSHIP OF NUTLEY, CITY OF ORANGE, TOWNSHIP OF SOUTH ORANGE VILLAGE, TOWNSHIP OF VERONA, AND TOWNSHIP OF WEST CALDWELL, DEFENDANTS, AND THE ESSEX COUNTY BOARD OF TAXATION, AND THE MAYORS, COUNCILS, AND ASSESSORS OF THE FOLLOWING ESSEX COUNTY MUNICIPALITIES, TOWNSHIP OF BELLEVILLE, TOWNSHIP OF BLOOMFIELD, TOWNSHIP OF LIVINGSTON, TOWNSHIP OF ROSELAND, AND TOWNSHIP OF WEST ORANGE, DEFENDANTS–APPELLANTS.

Argued May 1, 1995—Decided July 19, 1995.

*Julian F. Gorelli,* Deputy Attorney General, argued the cause for appellant The Essex County Board of Taxation (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Mark J. Fleming* and *Joseph L. Yannotti,* Assistant Attorneys General, of counsel).

*Robert D. Blau* argued the cause for respondents (*Blau & Blau,* attorneys; *Charles E. Blau,* of counsel).

*Vincent A. Pirone,* Director of Law, on behalf of appellant Township of Bloomfield, submitted a letter in lieu of brief relying on the briefs filed and oral argument presented on behalf of appellant The Essex County Board of Taxation.

*Sean F. Byrnes,* on behalf of appellant Township of Livingston, submitted a letter in lieu of brief relying on the briefs filed and oral argument presented on behalf of appellant The Essex County Board of Taxation (*McCarter & English,* attorneys).

*Joseph G. Dooley, Jr.,* Municipal Attorney, on behalf of appellant Township of West Orange, submitted a letter in lieu of brief relying on the briefs filed and oral argument presented on behalf of appellant The Essex County Board of Taxation.

*Robert J. Giordano,* on behalf of appellant Township of Belleville, submitted a letter in lieu of brief relying on the briefs filed and oral argument presented on behalf of appellant The Essex County Board of Taxation (*Giordano & Cataldo,* attorneys).

*Gabriel H. Halpern,* on behalf of appellant Township of Roseland, submitted a letter in lieu of brief relying on the briefs filed and oral argument presented on behalf of appellant The Essex County Board of Taxation (*Fox and Fox,* attorneys).

*Nelson C. Johnson* submitted a brief on behalf of *amici curiae* The Press of Atlantic City and Reporters Committee for Freedom of the Press.

*Henry H. Perritt, Jr.,* submitted a brief *amicus curiae, pro se.*

The opinion of the Court was delivered by

GARIBALDI, J.

Plaintiff Higg–A–Rella, Inc., t/a State Information Service, is a private New Jersey corporation in the business of selling municipal tax-assessment data to real-estate brokers, attorneys, appraisers, and other customers. State Information Service sought to obtain from Essex County a computer tape of the tax-assessment records of every municipality within the county. The computer tapes that State Information Service sought to copy contain the

same tax lists that are available in hard copy for the public to inspect and photocopy at the Essex County Board of Taxation. State Information Service has obtained such computer copies of tax lists from several other New Jersey counties for a fee. Although Essex County readily provides hard copies of the lists, and although it concedes that copying the computer tapes would involve minimal time and expense, it nonetheless refused to provide a copy of the computer tapes.

Plaintiff Blau Appraisal, also a New Jersey corporation, is a commercial real-estate appraiser. Plaintiff Robert Blau is an attorney who owns property and pays taxes in Essex County. He is the Vice President of Blau Appraisal. Both Blau Appraisal and Robert Blau are customers of State Information Service.

This appeal addresses whether plaintiffs are entitled to obtain a computer copy—as opposed to a hard copy—of Essex County's property tax-assessment list under either the Right-to-Know Law, *N.J.S.A.* 47:1A–1 to –4, or the common-law right of access.

I

Defendant [1] Essex County maintains a property tax list of every parcel of real estate in each of the county's municipalities pursuant to *N.J.S.A.* 54:4–55. According to that statute,

The county board of taxation shall ... cause the ... duplicates, certified by it to be a true record of the taxes assessed, to be delivered to the collectors of the various taxing districts in the county, and the tax lists shall remain in the office of the board as a public record.

Each municipality's tax assessor's office keeps a hard copy of its own list, and defendant Essex County Board of Taxation, in East Orange, keeps a hard copy of all of the lists. The lists contain the

---

[1] In the original complaint, plaintiffs named only Essex County as a defendant. Plaintiffs then amended their complaint to include Essex County College as a defendant because the College's data processing center had assembled the tapes. Subsequently, pursuant to the trial court's order, plaintiffs, in their second amended complaint, joined the Essex County Board of Taxation and all Essex County municipalities as defendants.

following information for each parcel: 1) street address and block and lot numbers; 2) brief description, including lot size and use; 3) assessed value, broken down into land and improvements; 4) whether the parcel is subject to farmland assessment, tax abatement, or any charitable or statutory tax exemption; 5) name and address of the owner, if different from the address of the parcel; and 6) if residential, whether the owner is entitled to a deduction or exemption as a senior citizen, veteran, disabled veteran, or surviving spouse of a person in one of those categories.

Counties and municipalities are not required to maintain their tax lists on computer. However, those that choose to do so must maintain the data in a format consistent with the New Jersey Property Tax System MOD IV, a data-processing system developed by the New Jersey Division of Taxation. *N.J.A.C.* 18:12A–1.16(b).

Essex County has chosen to maintain a computerized record of the tax-assessment data for every municipality in the county, except Newark. The computer tapes are prepared by, and located at, a data-processing center operated by Essex County College. The computerized tax-assessment records maintained by Essex County comply with state regulations, and the format of these records conform to the MOD IV system.

Plaintiffs filed a complaint in lieu of prerogative writ claiming that both the Right-to-Know Law and the common-law right of access entitled them to copies of the computer tapes. The trial court granted summary judgment for defendants. 265 *N.J.Super.* 616, 628 *A.*2d 392 (Law Div.1993). The court held that the computer tapes were not Right-to-Know documents because they are not required to be maintained. The court held that plaintiffs could also not prevail under the common law because their commercial interest in computer copies did not counterbalance defendants' right to decide if and for how much they wished to sell the tapes, which had been prepared at significant expense to the taxpayers. *Id.* at 625, 628 *A.*2d 392. The court also found that the fact that plaintiffs had ready access to hard copies mitigated

their interest in obtaining computer copies. *Id.* at 624, 628 *A*.2d 392.

The Appellate Division reversed. 276 *N.J.Super.* 183, 647 *A*.2d 862 (1994). Although agreeing with the trial court that the computer tapes were not Right-to-Know documents, the Appellate Division found that plaintiffs' legitimate commercial interest was sufficient to warrant access under the common law. *Id.* at 191, 647 *A*.2d 862. The court below remanded to the Law Division for determination of a reasonable fee, but ordered that such fee could offset only the direct cost to the Board of Taxation of copying the tapes, not the cost of compiling them. *Ibid.*

We granted defendants' petition for certification. 139 *N.J.* 440, 655 *A*.2d 443 (1995).

## II

[T]he conceptual models of our Right-to-Know Law do not seem readily adaptable to data collected in this information age....

[*Atlantic City Convention Center Auth. v. South Jersey Publishing Co.*, 135 *N.J.* 53, 66, 637 *A*.2d 1261 (1994).]

If a document is a Right-to-Know public record, then New Jersey citizens have the absolute right "to inspect such records. ... to copy such records by hand, and ... to purchase copies of such records." *N.J.S.A.* 47:1A–2. The Right-to-Know Law has no standing requirement, and citizens need make no showing of interest to exercise their rights under the Right-to-Know Law. However, the definition of a public record for purposes of the Right-to-Know Law is narrow. A Right-to-Know public record is one that is "required by law to be made, maintained or kept on file by any" agency or body of the State or any of its subdivisions. *Ibid.*

We have often found that the Right-to-Know Law does not provide citizens with access because the documents to which they seek access fall outside the narrow definition of a Right-to-Know public record. *E.g., North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders,* 127 *N.J.* 9, 601 *A*.2d 693 (1992)

(holding that elected body's phone bills were not Right-to-Know records because body was not required to keep records of parties called); *South Jersey Publishing Co. v. New Jersey Expressway Auth.*, 124 *N.J.* 478, 591 *A.2d* 921 (1991) (holding that memo of understanding from executive meeting about employee's termination was not Right-to-Know document because not required to be kept); *Nero v. Hyland*, 76 *N.J.* 213, 386 *A.2d* 846 (1978) (holding that character investigations ordered by governor in contemplation of nomination were not Right-to-Know documents because not·required to be made, maintained, or kept).

■ The Right-to-Know Law's "requirement that documents 'be made, maintained or kept on file,' has been strictly construed." *Home News Publishing Co. v. State*, 224 *N.J.Super.* 7, 11, 539 *A.2d* 736 (App.Div.1988). Hence, we agree with the trial court and the Appellate Division that because the computer tapes were not required to be made or maintained, they are not Right-to-Know public documents. As the opinion below noted, "[T]he maintenance of this computerized conglomeration of the municipal assessment records by the board is not required by any statute nor regulated by the Division of Taxation.... [T]he consolidated magnetic tape or tapes are merely 'a convenient means' by which the county board can perform its mandated functions." 276 *N.J.Super.* at 187–88, 647 *A.2d* 862.

We came to a similar conclusion last year in *Atlantic City*, *supra*, 135 *N.J.* 53, 637 *A.2d* 1261. The plaintiffs in that case sought to copy audio tapes made in a meeting of a public body's executive session. The defendants made the tapes to assist in preparing the official minutes, which were clearly Right-to-Know public records. In this case, there is a slightly different relationship between the paper and computer copies because they are really "twice-recorded data." In *Atlantic City*, we found that the minutes were Right-to-Know records but the audio tapes were not: The minutes were required to be made; the audio tapes were not required to be made. Likewise, in this case, although defendants must make and maintain the lists, nothing requires them to

make the computer tapes. The computer tapes are therefore not Right-to-Know documents.

Plaintiffs' statutory claim fails for another reason. Shortly after the Appellate Division had filed its opinion, the Legislature amended the Right-to-Know Law as follows:

> The right of the citizens of this State to inspect and copy public records pursuant to [the Right-to-Know Law] shall with respect to the copying of records maintained by a system of data processing or image processing, be deemed to refer to *the right to receive printed copies of such records.*
>
> [*L.*1994, *c.* 140, § 8 (codified at *N.J.S.A.* 47:1A–2.1) (emphasis added).]

█ The legislative history reveals that the Legislature intended to circumscribe the public's right under the Right-to-Know Law to receive copies of public records in computer form. The Assembly State Government Committee Statement explains the Legislature's intent in amending the Right-to-Know Law:

> The committee adopted amendments to this bill to … *clarify* that the public's right under the right to know law to obtain a copy of a public record shall, with respect to records "maintained by a system of data processing or image processing", take *the form of a right to receive a printed copy of the record.*
>
> [Assembly State Government Committee, *Statement to Assembly Bill No. 972 (committee amendments),* at 3 (May 2, 1994) (emphasis added).]

█ Because the expressed legislative intent of section 8 is to "clarify" rather than to change the Right-to-Know Law, the statute's clarifying provisions regarding the Right-to-Know Law apply now notwithstanding that the effective date for Chapter 140 is July 1, 1995. *Ibid.*; *L.*1994, *c.* 140, § 11.

The Legislature has considered replacing the Right-to-Know Law with a legislative scheme more in step with the information age. *See* S. 906, 206th Leg., 1st Sess. (1994); A. 659, 206th Leg., 1st Sess. (1994); A. 2371, 206th Leg., 1st Sess. (1994). Nonetheless, the format of the copies one is entitled to under the Right-to-Know Law has not changed as technology has developed. The current, narrowly drawn Right-to-Know Law still does not entitle citizens to obtain computer copies. *See Chapin v. Freedom of Info. Comm'n,* 22 *Conn.App.* 316, 577 *A.*2d 300 (holding that Connecticut's Freedom of Information Act, *Conn.Gen.Stat.Ann.* §§ 1–7 to 1–21k, entitles requestor to only hard copy of computer

document because of section 1–19a of statute, which is substantially similar to *L.*1994, *c.* 140, § 8), *cert. denied,* 216 *Conn.* 814, 580 *A.*2d 56 (1990).

### III

Although the Right-to-Know Law makes a narrow class of documents unqualifiedly available, the common law makes a much broader class of documents available, but on a qualified basis. *Atlantic City, supra,* 135 *N.J.* at 60, 637 *A.*2d 1261. Common-law records are any "records 'made by public officers in the exercise of public functions.'" *North Jersey Newspapers, supra,* 127 *N.J.* at 13, 601 *A.*2d 693 (quoting *Nero, supra,* 76 *N.J.* at 222, 386 *A.*2d 846). "These materials include almost every document recorded, generated, or produced by public officials whether or not 'required by law to be made, maintained or kept on file,' as required under" the Right-to-Know Law. *Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 582, 610 *A.*2d 903 (App.Div.) (quoting *N.J.S.A.* 47:1A–2), *cert. denied,* 133 *N.J.* 429, 627 *A.*2d 1135 (1992).

However, the common-law right of access to this broad category of records is contingent on two factors. First, the person seeking access must "establish an interest in the subject matter of the material." *South Jersey Publishing, supra,* 124 *N.J.* at 487, 591 *A.*2d 921 (citing *Irval Realty, Inc. v. Board of Pub. Util. Comm'rs,* 61 *N.J.* 366, 372, 294 *A.*2d 425 (1972)). Second, "the citizen's common-law right to gain access to [common-law] public records requires a *balancing* of interests." *Techniscan Corp. v. Passaic Valley Water Comm'n,* 113 *N.J.* 233, 236, 549 *A.*2d 1249 (1988) (citing *McClain v. College Hosp.,* 99 *N.J.* 346, 492 *A.*2d 991 (1985)). Unlike a citizen's absolute statutory right of access, a plaintiff's common-law right of access must be balanced against the State's interest in preventing disclosure. *South Jersey Publishing, supra,* 124 *N.J.* at 498, 591 *A.*2d 921. Finally, the common-law process, unlike the Right-to-Know process, "should be 'flexible and adaptable to different circumstances.'" *Technis-*

*can, supra,* 113 *N.J.* at 236, 549 *A.*2d 1249 (quoting *McClain, supra,* 99 *N.J.* at 362, 492 *A.*2d 991).

As an initial matter, we hold that the computer tapes are common-law documents, subject to balanced disclosure. They are indisputably made by (or at the behest of) public officers in the exercise of public functions. They are produced by public officials. "That our previous definition of a common-law record was drawn from sources that spoke in terms of traces of ink on paper does not limit its scope. The essence of the common-law is its adaptability to changing circumstances." *Atlantic City, supra,* 135 *N.J.* at 64, 637 *A.*2d 1261 (holding that audio tapes, although not Right-to-Know public records, are common-law public records). Likewise, we find that in view of rapidly advancing technological changes in storing information electronically, computer tapes also can be common-law public records.

Next, we examine whether plaintiffs have demonstrated an interest in the computer tapes, and we find that they have. Plaintiffs seek copies of the tapes to use in their legitimate for-profit enterprises. The requisite interest necessary to accord a plaintiff standing to obtain copies of public records may be either " 'a wholesome public interest or a legitimate private interest.' " *Loigman v. Kimmelman,* 102 *N.J.* 98, 112, 505 *A.*2d 958 (1986) (quoting *City of St. Matthews v. Voice of St. Matthews, Inc.,* 519 *S.W.*2d 811, 815 (Ky.1974)). Plaintiffs have demonstrated their legitimate private need, and they need not make any greater showing to satisfy the requirement that they have an interest in the material.

The degree of interest demonstrated by the person seeking access becomes important only in the context of the balancing test. That "balancing process [is] 'concretely focused upon the relative interests of the parties in relation to [the] specific materials.' " *Atlantic City, supra,* 135 *N.J.* at 60, 637 *A.*2d 1261 (quoting *McClain, supra,* 99 *N.J.* at 361, 492 *A.*2d 991). To gain access, that person's interest in disclosure of the document must outweigh

the State's interest in nondisclosure. In numerous cases, we have described the State's interest in nondisclosure as stemming from the need to maintain the confidentiality of the information sought. *E.g., Ibid.*; *South Jersey Publishing, supra,* 124 *N.J.* at 488, 591 *A.*2d 921; *Techniscan, supra,* 113 *N.J.* at 236, 549 *A.*2d 1249; *Loigman, supra,* 102 *N.J.* at 105, 112, 505 *A.*2d 958; *McClain, supra,* 99 *N.J.* at 355, 492 *A.*2d 991. *Nero, supra,* 76 *N.J.* at 224, 386 *A.*2d 846. Specifically,

[a]s the considerations justifying confidentiality become less relevant, a party asserting a need for the materials will have a lesser burden in showing justification. If the reasons for maintaining confidentiality do not apply at all in a given situation, or apply only to an insignificant degree, the party seeking disclosure should not be required to demonstrate a compelling need.

[*McClain, supra,* 99 *N.J.* at 362, 492 *A.*2d 991.]

*Accord Loigman, supra,* 102 *N.J.* at 105, 505 *A.*2d 958 ("Thus, if the governmental need in confidentiality is slight or non-existent, citizen-taxpayer status will ordinarily warrant that the matters be disclosed.").

Defendant asserts that the recently enacted amendment to the Right-to-Know Law, *L.*1994, *c.* 140, § 8, should affect the common-law balancing test because the amendment demonstrates the public's interest, as expressed by the Legislature, in disclosing only hard copies of computerized records. Although the amendment is a factor to be considered, the Right-to-Know definition of a public document is much narrower than the definition under the common law. Moreover, in enacting that amendment, the Legislature did not indicate that the amendment curtailed the common-law right of access to public records. Such a conclusion would effectively deny the public the right ever to obtain computer copies of public records. Before we would attribute such a drastic intent to the Legislature, that intent would have to be clear.

We find that under the common-law balancing test, plaintiffs have the right to obtain computer copies of the tax-assessment lists. The computer tapes are common-law public records; plaintiffs have a legitimate interest in them; and defendants assert no interest whatsoever in keeping the computerized

lists confidential. Initially, defendants claimed that release of certain information in computer form would risk unwarranted intrusion into the privacy of property taxpayers. Before this Court, defendants, represented by the Attorney General, have rescinded that argument. We find that, given the very public nature of the information in the lists, defendants properly chose not to pursue the confidentiality/privacy claim. The State has no interest in confidentiality: The lists contain simple, non-evaluative data that have historically been available to the public, and that do not give rise to expectations of privacy. *See Szikszay v. Buelow*, 107 *Misc.*2d 886, 436 *N.Y.S.*2d 558, 563 (Sup.Ct.1981) (requiring county to provide computer copy of property tax-assessment roll in part because of "the history of public access to assessment records"). However, defendants maintained that plaintiffs lacked the requisite interest under the common-law right to access. We disagree. As discussed above, where the governmental interest in confidentiality is nonexistent, the person seeking access need not make a compelling showing. Because defendants assert no interest in confidentiality, plaintiffs' legitimate private interest is clearly sufficient to entitle them to computer copies of the tax lists.

IV

We emphasize, however, that our holding is fact-specific, and may not be generalized to all cases in which people seek computer copies of common-law public records. Instances may indeed arise in which, as defendants originally argued, release of computer tapes could trigger a high interest in confidentiality, even though the same information is readily available on paper. *See, e.g., Kestenbaum v. Michigan State Univ.*, 414 *Mich.* 510, 327 *N.W.*2d 783 (1982) (denying access to computer copy of student directory on privacy grounds, even though it was readily available in hard copy). Thus, we do not adopt plaintiffs' argument that this case is exactly analogous to *Moore v. Board of Chosen Freeholders*, 39 *N.J.* 26, 186 *A.*2d 676 (1962). In that case, we essentially held that the right to hand copy common-law public

documents translated directly into an equivalent right to photo-copy them. We decline to make a similarly broad holding here: Although hand copies and photocopies are effectively similar, the same cannot be said of photocopies and computer copies.

Hence, although our common law is flexible, we are adapting it to the information age incrementally. For example, we rely on the common law's flexibility to apply principles from prior cases to this case, even though those prior cases are factually distinguish-able from this case in subtle ways. On the one hand, precedent requires the person seeking access to "establish an interest in the *subject matter* of the material he or she is seeking." *South Jersey Publishing, supra,* 124 *N.J.* at 487, 591 *A.*2d 921 (emphasis added) (citing *Irval, supra,* 61 *N.J.* at 372, 294 *A.*2d 425). According to precedent, the State's interest is primarily in the confidentiality of the information involved, and the balancing process focuses on the character of the materials sought to be disclosed. *Techniscan, supra,* 113 *N.J.* at 237, 549 *A.*2d 1249; *Loigman, supra,* 102 *N.J.* at 112, 505 *A.*2d 958. Our focus on whether the documents contain factual or evaluative information, *McClain, supra,* 99 *N.J.* at 363, 492 *A.*2d 991, also goes to the *subject matter,* as did our observation in *Atlantic City, supra,* that "[i]f the ... minutes ... accurately reflect the substance of the official action, disclosure of the tapes would be unnecessary." 135 *N.J.* at 68, 637 *A.*2d 1261. On the other hand, plaintiffs, who already have access to hard copies of the tax lists, are clearly interested in the *format* of the computer tapes. Our cases have not squarely addressed this obvious consequence of the advent of computerization, but our common law can accommodate the needs of this case.

In considering how the common law should treat the question of information in different formats, we look not to the Right-to-Know Law, but to cases in other jurisdictions and to cases interpreting the federal Freedom of Information Act (FOIA), 5 *U.S.C.A.* § 552. We thus reject the Attorney General's contention that the amendment to the Right-to-Know Law—limiting the statutory right to copy to the right to obtain hard

copies—should shape our common law. *See supra* at 48–50, 660 *A.*2d at 1170.

Although our Right to Know Law is not coterminous with the common-law right of access to public records, we believe that our common-law principles will be better informed by reference to concepts that have gained acceptance in jurisdictions whose freedom-of-information laws include such common-law records and substantive standards for determination of materials that are exempted from disclosure. We refer to such codes only for the guidance they provide. The model for most state freedom-of-information laws is the federal Freedom of Information Act. . . .

[*McClain, supra,* 99 *N.J.* at 356, 492 *A.*2d 991.]

Federal cases do not provide clear direction. In *Dismukes v. Department of Interior,* 603 *F.Supp.* 760, 761–62 (D.D.C.1984), the court emphasized that the crux of the FOIA is information and not form. The court held that a government agency that had made information available in a reasonably accessible format (microfiche) did not have to make it available in the format requested (computer tape). *Id.* at 762–63. In short, the agency did not have to make "twice-recorded information . . . available in the format selected by the requester." *Id.* at 762. *Dismukes* remains good law, but a later federal case, although factually distinguishable, seems to diverge on the question of format. *Petroleum Information Corp. v. United States Department of Interior,* 976 *F.*2d 1429 (D.C.Cir.1992), involved not "twice-recorded data," but data that was available in many and varied paper documents, as well as in a preliminary computer compilation of those paper documents made by the Bureau of Land Management. The Bureau sought to avoid copying the database pursuant to a FOIA request partly on the ground that the data was available elsewhere. The Bureau argued that because the requestor had access to the information through the paper documents, the requestor must have been seeking the computer copy to uncover the Bureau's deliberative process (a FOIA exemption, 5 *U.S.C.A.* § 552(b)(5)). The court responded: "But the Bureau itself has effectively described the difficulties of using the paper source documents; [the requestor] cannot be faulted for seeking to avoid the trouble of amassing information the Bureau has already collected." *Id.* at 1437. Although clearly uneasy with the holding in *Dismukes,* the circuit

court distinguished it on the grounds that the information request-
ed in *Petroleum Information* was not twice-recorded, and the
paper source documents were not a reasonably accessible form of
the information that was in the database. *Id.* at 1437 n. 11.

Cases from other states are more directly analogous to this
case, and point more clearly toward availability of computer
copies. For example, as noted above, although the court in
*Kestenbaum, supra,* 327 *N.W.*2d 783, approved withholding of a
computer copy of a student directory on privacy grounds, the
court in *Szikszay, supra,* 436 *N.Y.S.*2d at 563, discounted privacy
concerns and required provision of a computer copy of a county
tax-assessment roll. In *Menge v. City of Manchester,* 113 *N.H.*
533, 311 *A.*2d 116, 119 (1973), which also involved a computerized
property tax roll, the New Hampshire Supreme Court came to
substantially the same conclusion as the *Szikszay* court. *Accord
Associated Tax Serv., Inc. v. Fitzpatrick,* 236 *Va.* 181, 372 *S.E.*2d
625 (1988); *cf. Brownstone Publishers v. Department of Bldgs.,*
146 *Misc.*2d 376, 550 *N.Y.S.*2d 564, 566 (Sup.Ct.), *aff'd,* 166 *A.D.*2d
294, 560 *N.Y.S.*2d 642 (1990).

 We remain committed to providing citizens with conve-
nient and efficient public access to government information.
Nonetheless, we recognize that the traditional rules and practices
geared towards paper records might not be appropriate for com-
puter records. Release of information on computer tape in many
instances is far more revealing than release of hard copies, and
offers the potential for far more intrusive inspections. Unlike
paper records, computerized records can be rapidly retrieved,
searched, and reassembled in novel and unique ways, not previous-
ly imagined. For example, doctors can search for medical-mal-
practice claims to avoid treating litigious patients; employers can
search for workers'-compensation claims to avoid hiring those who
have previously filed such claims; and credit companies can search
for outstanding judgments and other financial data. Thus, the
form in which information is disseminated can be a factor in the
use of and access to records. Those new considerations must be

factored into the common-law balancing test between the State's interest in nondisclosure and the public's right to access. In this case, however, the State's interest in nondisclosure is minimal. *Supra* at 49, 660 *A*.2d at 1170.

## V

The Attorney General, in representing the Essex County Board of Taxation, reflects the State's legitimate interest in preserving the potential commercial value of the State's databases, even while serving the public's need for convenient access. The cost of computerization is substantial. Under both the Right-to-Know Law and the common law, the fee must be reasonable, and cannot be used as a tool to discourage access. *Moore, supra,* 39 *N.J.* at 31, 186 *A*.2d 676; *Home News Publishing Co. v. Department of Health,* 239 *N.J.Super.* 172, 182, 570 *A*.2d 1267 (App.Div. 1990). Historically, a reasonable fee meant one that did not exceed the actual cost of copying. *Moore, supra,* 39 *N.J.* at 31, 186 *A*.2d 676. Plaintiffs thus assert that the fee for the computer tapes of the tax-assessment lists should reflect only the cost of the physical tape and the hours required to make the copy. The trial court disagreed, noting that "the computer tapes represent a tremendous amount of data entry, at taxpayer expense. I see no reason why defendants should not decide whether they wish to sell it, and at what price." 265 *N.J.Super.* at 625, 628 *A*.2d 392. The Appellate Division, however, in remanding this matter for a determination of a reasonable fee, effectively ordered that that fee reflect only the direct cost of copying the tapes, and not the cost of compiling them. 276 *N.J.Super.* at 191, 647 *A*.2d 862 ("The matter is remanded to the trial judge to determine the reasonable cost to prepare a duplicate list ... on the particular electronic medium sought by plaintiffs.").

This record does not provide sufficient information to allow the Court to determine the reasonable fee or what costs should be included in determining that fee. Nonetheless, without deciding what costs the fee should reflect, we observe that simply capping

the fee at the actual, direct cost of copying may not properly account for the real differences between electronic and paper media. Those differences were sufficient to motivate this action, and they might have implications for the fee that a public body charges for electronic copies. Defendants assert that limiting the fee to actual costs would violate the growing public policy of shifting the cost of developing and maintaining computerized public records from taxpayers generally to those who use them, and even profit from them, directly. According to defendants, such a limited fee structure would discourage further computerization. In *Techniscan, supra,* we addressed that issue, even though the plaintiff in that case sought computer printouts, and not electronic copies. We observed: "No party discussed whether the allowable costs of any requested copying were sufficient to the circumstances. The Legislature is considering further clarification of the relative interests of for-profit information-gathering services and public bodies." 113 *N.J.* at 237 n. 1, 549 *A.*2d 1249.

We also note that the Legislature, in enacting and considering bills to update the State's public-access law in a variety of areas, has consistently addressed the impact of technology on costs and fees. Section 1(a) of *L.*1994, *c.* 54 authorizes the Administrative Office of the Courts to "develop and operate an automated data processing system that allows the public to access court information." Section 1(b) authorizes us to adopt fee schedules, and section 1(c) provides that the "proceeds collected ... shall be deposited in the 'Court Computer Information System Fund' ... dedicated to the development, establishment, operation and maintenance of computerized court information systems in the judiciary." In an example of proposed legislation, S. 906, 206th Leg., 1st Sess. (1994), and A. 659, 206th Leg., 1st Sess. (1994), which would replace the Right-to-Know Law, both provide:

> A custodian may ... permit access to government records by remote electronic means or provide the requestor with a computer copy of the records. The fee ... shall include direct *and indirect* costs, but shall not exceed the reasonable cost to the agency of *making such access available to the requestor or of creating and transmitting* the computer copy ... to the requestor.
>
> [Emphasis added.]

Another piece of proposed legislation, A. 2371, 206th Leg., 1st Sess. (1994), would structure fees to favor *end-user* access. That bill would make many public state records "available to the public through the largest nonproprietary cooperative public computer network," i.e., the Internet. Public bodies could charge users a fee for access through the Internet, but that fee could not exceed the actual, direct cost of providing the information. Private individuals or entities could also sell electronic access to the records, but they could not charge more than the public body itself charges.

Clearly, the public's right to access to government information in this technological age presents complicated issues with widespread ramifications. Resolution of such major policy issues lies more properly with the Legislature. Ultimately, the Legislature must determine how and at what cost the public shall be entitled to receive electronic records. Until the Legislature acts in this field, however, courts must decide those issues. Hence, we remand to the trial court to determine what is a reasonable fee to charge plaintiffs for a copy of Essex County's computer tape of the tax-assessment lists.

## VI

For the reasons stated above, we affirm the opinion below insofar as it held that plaintiffs have a common-law right to obtain a duplicate of the computer tape of the tax-assessment lists. We remand to the trial court for determination of a reasonable fee in accordance with this opinion.

*For modification, affirmance and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.