276 N.J. Super. 183 (1994)
647 A.2d 862
HIGG-A-RELLA, INC., T/A STATE INFORMATION SERVICE, BLAU APPRAISAL COMPANY, AND ROBERT D. BLAU, PLAINTIFFS-APPELLANTS,
v.
COUNTY OF ESSEX, A POLITICAL SUBDIVISION OF THE STATE OF NEW JERSEY, BOARD OF TRUSTEES OF ESSEX COUNTY COLLEGE, THE ESSEX COUNTY BOARD OF TAXATION, AND THE MAYORS, COUNCILS, AND ASSESSORS OF THE FOLLOWING ESSEX COUNTY MUNICIPALITIES, TOWNSHIP OF BELLEVILLE, TOWNSHIP OF BLOOMFIELD, TOWNSHIP OF CALDWELL, TOWNSHIP OF CEDAR GROVE, CITY OF EAST ORANGE, TOWNSHIP OF ESSEX FELLS, TOWNSHIP OF FAIRFIELD, TOWNSHIP OF GLEN RIDGE, TOWNSHIP OF IRVINGTON, TOWNSHIP OF LIVINGSTON, TOWNSHIP OF MAPLEWOOD, TOWNSHIP OF MILLBURN, TOWNSHIP OF MONTCLAIR, CITY OF NEWARK, TOWNSHIP OF NORTH CALDWELL, CITY OF ORANGE, TOWNSHIP OF ROSELAND, TOWNSHIP OF SOUTH ORANGE VILLAGE, TOWNSHIP OF VERONA, TOWNSHIP OF WEST CALDWELL, TOWNSHIP OF WEST ORANGE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1994.
Decided September 23, 1994.
*185 Before Judges J.H. COLEMAN, MUIR, Jr. and PAUL G. LEVY.
Robert D. Blau argued the cause for appellants (Blau & Blau, attorneys; Mr. Blau, on the brief).
Julian F. Gorelli, Deputy Attorney General, argued the cause for respondent Essex County Board of Taxation (Deborah T. Poritz, Attorney General, attorney; Mark J. Fleming, Assistant Attorney General, of counsel; Mr. Gorelli, on the brief).
All other respondents relied on the brief filed by the Attorney General.
The opinion of the court was delivered by LEVY, J.S.C. (temporarily assigned).
Relying on the public records doctrine, plaintiffs sought a computer readable copy of the Essex County property tax assessment lists from the Essex County Board of Taxation. The board agreed to provide a copy of the official lists on paper but refused plaintiffs' demand for an electronic copy. On cross-motions for summary judgment, the trial judge ruled for defendants. On appeal, we reverse and hold plaintiffs are entitled to a copy made *186 on magnetic tape, upon payment of a reasonable fee, because the electronic records are public records under the common law.
The statutory scheme of N.J.S.A. 54:4-23 et seq. requires all real property be assessed for taxation and specifies the method for making and maintaining the assessment records. Each year municipal assessment lists must be filed with the county board of taxation "properly made up in such manner and form required by the Director of the Division of Taxation," to be reviewed and revised by the county board in its official capacity. N.J.S.A. 54:4-35. In Essex County, all the municipal tax assessors use electronic data processing (computers) to create, modify and maintain the tax assessment lists required by various statutes, as do most assessors throughout the state.
The New Jersey Property Tax System MOD IV is a data processing program developed by the Division of Taxation, prescribing the format municipal assessors are to use for computerized record keeping. Even private appraisal firms engaged for revaluations are required to use the MOD IV format if they contract to provide a magnetic tape.
In the event a magnetic tape containing the new values is provided by the firm, said tape will be in a format consistent with the New Jersey Property Tax System MOD IV so that entry of the data can be made directly into the taxing district's Master File.
[N.J.A.C. 18:12-4.11(c).]
The computerized records of tax assessments in Essex County comply with these regulations and are kept in accordance with the MOD IV system. Using these records, the county board and each municipality can produce the printed tax lists required by N.J.S.A. 54:4-35.
Plaintiffs, State Information Systems and Blau Appraisal Company, maintain their own databases of municipal assessment lists from several counties, and they sell access to these lists to their *187 customers via computers.[1] Wanting to add the Essex County assessment lists to their databases,[2] and knowing the board maintains a centralized access to all the computer records for each municipality except Newark,[3] plaintiffs sought one master electronic copy of the records rather than the printed lists for each municipality. The board initially agreed to deliver a copy of the master computer tape if the municipalities consented, but plaintiffs' quest was frustrated when consent was refused.
The cross-motions for summary judgment dealt with plaintiffs' contention that the computerized records were public records pursuant to the Right-to-Know Law, N.J.A.C. 47:1A-2, and to common law. The judge denied plaintiffs' request for electronic copies of the records mainly because plaintiffs had convenient access to the "written" assessment lists, and partially because they wanted the data in a particular form for their own business reasons.
Plaintiffs' contention that the Right-to-Know Law requires the county board to provide a copy of the master computer tape is erroneous. That law covers only records "required by law to be made, maintained or kept on file." N.J.S.A. 47:1A-2. Any records required to be kept in computerized form are available to all citizens without qualification. However, the maintenance of this computerized conglomeration of the municipal assessment records by the board is not required by any statute nor regulated by the Division of Taxation. Although each municipality must make and keep its assessment records in accordance with the MOD IV system, the MOD IV regulations do not apply to the county board's records, because the consolidated magnetic tape or tapes *188 are merely "a convenient means" by which the county board can perform its mandated functions. Cf., Atlantic City Convention Center Authority v. South Jersey Publishing Co., 135 N.J. 53, 637 A.2d 1261 (1994) (audio tapes used "as a convenient means to enable preparation of the official [records]" were not Right-to-Know records). While the municipal computerized records may be public records under the Right-to-Know Law because they are required to be maintained under the MOD IV system, we conclude the consolidated electronic records maintained by the Essex County Board of Taxation do not fall within the definition of N.J.S.A. 47:1A-2.
Under the common law, however, the electronic tax assessment records maintained by the county board are public records. The common law definition of a public record is very broad, including "almost every document recorded, generated, or produced by public officials, whether or not `required by law to be made, maintained or kept on file,' as required under the [Right-to-Know Law]." Shuttleworth v. City of Camden, 258 N.J. Super. 573, 582, 610 A.2d 903 (App.Div. 1992). Accordingly, by preparing and maintaining a consolidation of the various municipal assessment lists, the county board created a public record.
We also conclude the county board's electronic record of all the municipal assessment lists is a public record under the common law because it is used by the board as an expeditious way to print any particular official municipal assessment list. In Atlantic City, the Court held audio tapes used to prepare official written minutes were public records subject to "balanced disclosure." The Court recognized the versatility of the common law's definition of records in stating:
That our previous definition of a common-law record was drawn from sources that spoke in terms of traces of ink on paper does not limit its scope. The essence of the common law is its adaptability to changing circumstances. We are satisfied that audio tapes may constitute common-law public records. For example, in Evidence Rule 801(e), we define a "writing" to include "sounds, * * * set down or recorded by * * * mechanical or electronic recording * * * and preserved in a perceptible form."
[135 N.J. at 64, 637 A.2d 1261.]
*189 The Court also specified that a "memorial" at common law was not limited to "a record that is to be kept but rather one that provides a `"convenient, appropriate, or customary method"' of documenting official action. 135 N.J. at 66, 637 A.2d 1261 (citations omitted.)"
It must be borne in mind that the electronic records kept by the county board of taxation are not simply workproduct used to prepare the lists required by N.J.S.A. 54:4-35. The computerized data does not reflect only preliminary workproduct; it is another form of the already public assessment lists. As we have concluded this particular set of assessment records is a common law public record, availability of such a record should not be limited by its technological form. Asbury Park Press v. Dept. of Health, 233 N.J. Super. 375, 558 A.2d 1363 (App.Div.), certif. denied 117 N.J. 646, 569 A.2d 1344 (1989) is to be distinguished from this appeal. There the press sought copies of computerized spreadsheet analyses used to create a statistical report required by law, and we denied access because the analyses represented the preliminary thinking used to create the statistical report. Here we are not dealing with preparatory investigations of proposed assessments but with final determinations which are admittedly public records when in another form.
It has long been our policy to respect and recognize advances in technology. In a case dealing with a county that conceded the right to inspect and hand copy public records, but would not allow use of a photocopier, Judge Goldmann eloquently explained that the common law right to access public records was not to be so unreasonably limited, stating:
To ignore the efficacy and practical worth of [photocopying] equipment, and to compel plaintiffs to resort to laborious and time-consuming hand-copying, would substantially impair their right to inspect and copy.
To prohibit photocopying with proper equipment is to ignore the significant progress which our generation has witnessed. Photocopying is an everyday procedure in business and professional offices, large and small. Plaintiffs cannot be restricted to the use of pen, pencil and pad. Were we to accept the reason defendants advance for denying the right to photocopy, then it might well be said *190 that a records custodian in some past day could, with equal justification, have insisted that the interested citizen use quill instead of pen, or pen instead of typewriter.
[Moore v. Bd. Freeholders Mercer Cty., 76 N.J. Super. 396, 408, 184 A.2d 748 (App.Div.), aff'd 39 N.J. 26, 186 A.2d 676 (1962).]
In affirming the Appellate Division, the Supreme Court modified the ruling only to the extent that it required the public official to furnish the photocopy at a reasonable cost, thus preventing possible damage to the official records through the use of a private photocopier. In the course of its opinion, the Court said:
The distinction between manual copying and machine photocopying inheres solely in the method of accomplishing the common law right to obtain a copy. It bears no relationship to the existence of that right itself. There can be no doubt of plaintiffs' right to obtain photocopies of these records.
[39 N.J. at 30, 186 A.2d 676.]
Here, too, we are faced with innovations in recordkeeping that has surpassed current statutory and regulatory standards. Originally, before amendment to its present form by L. 1966, c. 138, § 9, N.J.S.A. 54:4-35 required the list be "properly made up and legibly written in ink." Today, N.J.A.C. 18:12A-1.16(a) requires the list be "type-written unless an accounting machine is used." We recognize the applicability of the holding of Moore to our situation. The Essex County Board of Taxation is only asked to furnish an exact copy of the public record it maintains even though the record is neither written in ink, typewritten or made with an "accounting machine."
At common law, access is to be permitted unless outweighed by a countervailing privacy interest. Defendants argue there is a privacy interest in these computer records. But here, as in Moore, no privacy interest exists because the exact records are freely available on paper instead of magnetic tape. Since plaintiffs are willing to pay the county board's reasonable cost of furnishing the electronic copy, we conclude they have the right to obtain it. Defendants claim they want to protect Essex County homeowners from "commercial exploitation ranging from the mass marketing of aluminum siding, swimming pools or pornography to any other proper or improper form of mass solicitation." They *191 assert there is an increased chance of fraud and misrepresentation because "[i]t would be all too easy for an unscrupulous customer of plaintiffs to alter systematically and undetectably the assessment data contained on official looking computer-prepared documents." We conclude these contentions are without merit. R. 2:11-3(e)(1)(E).
Similarly, although the trial judge was concerned that "the computer tapes represent a tremendous amount of data entry, at taxpayer expense,"[4] the effort was not made by the county board. Rather, the major effort was made by the various municipal tax assessors when they created and maintained the lists for their individual municipalities. The cost to be defrayed by plaintiffs is that of the county board, related only to its creation of the consolidated record from all of the electronic files supplies by municipal assessors. We hold only that the cost to plaintiffs for a copy of the composite record must be reasonable. Moreover, we are not deterred by plaintiffs' personal business interest in these records, as the interest required to obtain copies of public records may be either "a wholesome public interest or a legitimate private interest." See Loigman v. Kimmelman, 102 N.J. 98, 112, 505 A.2d 958 (1986).
The order for summary judgment in favor of defendants is reversed. The matter is remanded to the trial judge to determine the reasonable cost to prepare a duplicate list of the municipal tax assessment records on the particular electronic medium sought by plaintiffs, in the absence of the parties' resolving the cost among themselves. We do not retain jurisdiction.
Reversed and remanded.
NOTES
[1] Plaintiffs' clients include real estate brokers, attorneys, appraisers and others.
[2] Plaintiffs have copies of assessment lists from Burlington, Hunterdon, Middlesex, Morris, Ocean, Passaic, Somerset and Union Counties.
[3] The records were maintained at the data processing center of the Essex County College pursuant to a contract with the county board of taxation.
[4] 265 N.J. Super. at 625, 628 A.2d 392.