279 N.J. Super. 489 (1995)
653 A.2d 589
THE BOARD OF EDUCATION OF NEWARK, A BODY CORPORATE ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY; EUGENE C. CAMPBELL, EXECUTIVE SUPERINTENDENT OF SCHOOLS OF THE BOARD OF EDUCATION OF NEWARK; AND EUGENE C. CAMPBELL, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
NEW JERSEY DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS; MARGARET M. MCMAHON, DIRECTOR OF DIVISION OF PENSIONS, ACTING SECRETARY OF THE STATE HEALTH BENEFITS COMMISSION AND/OR CUSTODIAN OF RECORDS; SAMUEL F. CRANE, NEW JERSEY STATE TREASURER; WILLIAM G. SCHEUER, COMMISSIONER OF THE DEPARTMENT OF PERSONNEL AND MERIT SYSTEM BOARD, DIVISION OF PENSIONS; SAMUEL F. FORTUNATO, COMMISSIONER OF THE DEPARTMENT OF INSURANCE; PATRICIA A. CHIACCHIO, SECRETARY, STATE HEALTH BENEFITS COMMISSION AND AS CUSTODIAN OF RECORDS, STATE HEALTH BENEFITS COMMISSION; JOHN DOE (A FICTITIOUS INDIVIDUAL), CUSTODIAN OF RECORDS, STATE HEALTH BENEFITS COMMISSION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1994.
Decided February 21, 1995.
*492 Before Judges PETRELLA, HAVEY and BROCHIN.
Sue Kleinberg, Deputy Attorney General, argued the cause for appellants (Deborah T. Poritz, Attorney General of New Jersey, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Kleinberg on the brief).
Michael D. Bross, argued the cause for respondents (Bross, Strickland, Cary, Grossman & Icaza, P.A., attorneys; Sheldon Bross, of counsel; Michael D. Bross, on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiff, Newark Board of Education (Board), is enrolled in the New Jersey State Health Benefits Plan which provides basic and major medical health insurance coverage to State employees and employees of participating local governments, including school *493 districts. See N.J.S.A. 52:14-17.35 and -17.36. The self-insured plan is controlled by the State Health Benefits Commission (Commission) within the Division of Pensions, Department of Treasury, N.J.S.A. 52:14-17.27, and administered by Blue Cross/Blue Shield and Prudential Insurance Company (administrators) under contract with the Commission.
By leave granted, the Division appeals from a summary judgment entered in the Law Division, compelling the Division to disclose as a public record the aggregate claims dollars paid to the Board's employees for the school year 1989-90 and from July 1, 1990 to the date of judgment, December 8, 1993. The central issue is whether the claims-information data constitutes a "public record" under New Jersey's Right-to-Know Law, N.J.S.A. 47:1A-2 or under principles of common law. We conclude that the data constitutes a public record under both the Right-to-Know Law and common law, and affirm.
The Board pays its insurance premiums for its employees to the Division. Employee claims are processed by a claims administrator whose data is computerized and maintained according to the social security number of each subscriber. Claims data is fed into a computer master file kept by the administrators. The Division has access to the master file through a modem. The master file is assigned one of two possible codes  State or local. The claims data is filed so that the computer operator can retrieve data using the appropriate code.
According to the Board, during the 1990-91 school year it paid the Division in excess of $25,000,000 in premiums for coverage for its employees. On May 21, 1991, the Board wrote to the Division asking for information concerning its participation in the State plan. Specifically, it requested disclosure of the total payments made by it for the 1989-90 school year and for the period from July 1, 1990 to May 21, 1991. It also requested a breakdown of the total claims paid by the Division, through the administrators, to Board employees for the same time period, and a computation of total "administrative charges" assessed against the Board during *494 that period. The Division responded by letter dated May 28, 1991, stating that "[c]laims data is tracked only by group  State or Local. The claims experience of individual participating employers is not available." On November 19, 1991, the Board's counsel again wrote to the Division and asked that it reconsider its decision denying the Board the benefits information. The Division considered the letter a request for an appeal from a State agency and forwarded the matter to the Office of Administrative Law.[1]
The Board thereupon filed this action in lieu of prerogative writs demanding disclosure of the benefits information. The Board claims that the data sought is a public record pursuant to both New Jersey's Right-to-Know Law, N.J.S.A. 47:1A-2, and common-law principles.
The facts, developed during discovery, are not in dispute. According to Patricia Chiacchio, employed by the Department of the Treasury and Acting Secretary of the Commission, because the computer master file is assigned only two possible codes  State or Local  the data sought by the Board cannot be readily retrieved because the claims information is not segregated or coded by individual local employer. Ms. Chiacchio also states that "[i]t is impractical" to obtain local employer claims experience by totaling the claims of each employee "because it would necessitate retrieving each employee's claim file individually, which would not only be extremely time consuming and costly (approximately $6,000 per 500 [employees]), but, because of the demand on computer time and capacity, would ... [disrupt] ... the operation of the claims system." She also explains that the processing of individual employee information "would not yield reliable data" because the data may be "grossly understated," erroneous social security numbers may be supplied by the employer, and there is significant employee turnover among local employers.
*495 Dennis Murray, is an Account Executive employed by Prudential, one of the administrators of the State plan. He testified in his deposition that total claims by the Board's employees for the 1989-90 school year could be produced by obtaining a computer tape of the employees' social security numbers and "run[ning]" it against the entire State Health Benefits Plan computer master file. The process would extract "total claim dollars" for that group. In fact, according to Murray, Prudential had produced this type of claims experience for other clients. Karen Roberts, a Senior Systems Analyst with Prudential, testified that similar reports had been produced for Bergen County in 1992 and that the Prudential program was capable of producing claims data for individual persons. Similarly, Blue Cross/Blue Shield representatives testified that prior to January 1991, Blue Cross produced these types of reports for other employers and that the only bar against producing such information was the contract with the State that prohibits Blue Cross from distributing the information. What would be needed, according to the Blue Cross/Blue Shield representatives, is the employees' social security numbers in order to access and retrieve the information from the computer master file.
In granting summary judgment to the Board, Judge Weiss required the Division to make available to the Board all premium payments and claims information for the pertinent time period. He found that the information sought constituted "records which are required by law to be made, maintained or kept on file," N.J.S.A. 47:1A-2, because the information was necessary in order for the Commission to prepare an annual report required by N.J.S.A. 52:14-17.27. The judge also determined that the Board was entitled to the information under its common-law right to inspect because the Board acted in good faith and its interest in access to the records outweighed any public interest in confidentiality. The judge also found that it was "feasible" for the Commission to produce the data "subject to the Board reimbursing the producing party the cost of reproducing the information." However, the judge denied summary judgment as to the Board's *496 demand for the aggregate administrative charges assessed against it because of fact issues concerning the manner in which the charges were computed.
The Division advised us during oral argument that it is willing to furnish the total figures concerning the Board's payment of premiums during the pertinent time period. Thus, the narrow issue is whether the claims-data information is a public record under either the Right-to-Know Law or the common law.

I
The Division first argues that the Board's complaint in the Law Division should have been dismissed because the Board's demand for the claims-data information constitutes an appeal from a State agency, cognizable only in the Appellate Division. R. 2:2-3(a)(2). In denying the Division's motion to dismiss on this jurisdictional ground, Judge Weiss held that the Law Division was the proper forum to hear Right-to-Know Law cases, citing Philadelphia Newspapers, Inc. v. State, Dep't of Law & Public Safety, 232 N.J. Super. 458, 557 A.2d 688 (App.Div. 1989).
In Philadelphia Newspapers, the court stated that although a Right-to-Know Law action "arguably may be brought in the Appellate Division pursuant to R. 2:2-3(a)(2), the action belongs in the Law Division for the reasons stated in Pfleger [v. State Highway Dep't., 104 N.J. Super. 289, 291-93, 250 A.2d 16 (App.Div. 1968)]." 232 N.J. Super. at 466, 557 A.2d 688 (emphasis added). Pfleger held that an action in lieu of prerogative writs to compel the Department of Transportation to institute condemnation proceedings belonged in the Law Division, not in the Appellate Division, because:
[t]here is no administrative machinery within the Department of Transportation for itself condemning land, for hearing the arguments for and against seeking condemnation in court ... [n]or is there a procedure in such cases by which a record may be made before the Department, upon which this court can review its decision.

[104 N.J. Super. at 291-92, 250 A.2d 16 (emphasis added).]
*497 Citing Pfleger, Philadelphia Newspapers reasons that:
[a] trial court is better able than an appellate tribunal to determine initially whether the material sought qualifies as a `public record' under the Right to Know Law and to balance the parties' interests when that must be done to determine whether there is a common-law right of access.
[232 N.J. Super. at 466, 557 A.2d 688.]
Implicitly rejecting the reasoning in Philadelphia Newspapers, the Division here points out that the "administrative machinery" to hear and decide Right-to-Know cases involving state agencies unquestionably exists in the form of a plenary hearing before the Office of Administrative Law, and indeed that one such hearing in an unrelated matter is presently pending before an Administrative Law Judge.[2] The Division argues that:
to permit [the Law Division to hear the case] would be to carve out what may only be the first of many exceptions to eviscerate R. 2:2-3(a)(2), not only with regard to all public records questions in all State agencies, but with regard to any other category of administrative decision-making that may seem novel or unusual.
We decline to express our agreement or disagreement with Philadelphia Newspapers, or the view here expressed by the Division. Suffice it to say that in the present case, we already have an exhaustive factual record before us, including voluminous depositions and certifications concerning the method by which claims information is computerized by the Commission and its administrators. Both the Law Division and Appellate Division are parts of the Superior Court. Clearly there is "jurisdiction" in the Law Division. The question is whether the Court Rules sensibly allocate the matters, considering the primary functions of the separate Divisions of the Superior Court. To dismiss on technical procedural grounds would simply cause duplication of that factual record in the Office of Administrative Law. Ultimately, the matter would reach us by direct appeal from the State agency. We would then be called upon, as in the present appeal, to decide whether the claims-data information constitutes a public record, *498 an issue we deem essentially legal in nature. Dismissal would therefore cause substantial delay and an unnecessary expenditure of public funds and judicial resources.

II
Under the Right-to-Know Law, all "records which are required by law to be made, maintained or kept on file by any ... agency ... of the State ... shall ... be deemed to be public records." N.J.S.A. 47:1A-2. The threshold question is therefore whether the aggregate claims-data information sought by the Board falls within the definition of "public records." See South Jersey Publishing Co. v. New Jersey Expressway Auth., 124 N.J. 478, 489, 591 A.2d 921 (1991). As stated, Judge Weiss concluded that the data was required to be made, maintained and kept on file by virtue of N.J.S.A. 52:14-17.27, which requires the Commission to "publish annually a report showing the fiscal transactions of the program for the preceding year and stating other facts pertaining to the plan."
The Division contends that the judge erred because nowhere in the statute is there any reference to either the compilation or segregation of individual claims data by local employer. It reasons that there is no "record" to which N.J.S.A. 47:1A-2 can ever be applied, because the data for individual employer-participants is not maintained or kept in the computer master file. The Division argues that "[n]ot only is there no explicit requirement in any law that such compilations be made, but there is no implicit requirement that they be constructed as part of the discharge of some other legally mandated duty."
As Judge Weiss observed, the Division takes too narrow a view of the statutory definition of "public record." The Right-to-Know Law embodies the State's "strong commitment to access to public records." South Jersey, 124 N.J. at 489, 591 A.2d 921. Under the Law, "any citizen ... has an unqualified right to inspect public documents if they are, in fact, the statutorily-defined *499 records." North Jersey Newspapers Co. v. Passaic Cty. Bd. of Chosen Freeholders, 127 N.J. 9, 14, 601 A.2d 693 (1992).
We acknowledge, of course, that not all "routinely computerized data made by a public agency ... becomes a Right-to-Know record." Techniscan Corp. v. Passaic Valley Water Comm'n., 113 N.J. 233, 237, 549 A.2d 1249 (1988). For example, our Supreme Court has observed that simply because a public water utility keeps computer-generated billing records in its file, did not establish that computer printouts were public records. Ibid. Similarly, in Higg-A-Rella, Inc. v. County of Essex, 276 N.J. Super. 183, 187, 647 A.2d 862 (App.Div. 1994), we held that a computerized master tape developed by a County Board of Taxation containing municipal real estate tax assessment records was not a public record under N.J.S.A. 47:1A-2 because it was not "required by any statute nor regulated by the Division of Taxation." We noted that each year municipal assessment lists must be filed with the County Board for purposes of review and revision. N.J.S.A. 54:4-35. 276 N.J. Super. at 186, 647 A.2d 862. In Essex County, all municipal tax assessors create, modify and maintain the tax assessment list by computer, utilizing the New Jersey Property Tax System MOD IV, a data processing program developed by the Division of Taxation. Ibid. From these programs, the County Board prepared a master electronic copy of municipal assessment lists. Id. at 187, 647 A.2d 862. We reasoned that although a municipality must keep its assessment records in accordance with the MOD IV system, the Division regulations do not apply to the County Board's records, "because the consolidated magnetic tape [is] merely `a convenient means' by which the county board can perform its mandated functions." Id. at 187-88, 647 A.2d 862 (quoting Atlantic City Convention Ctr. Auth. v. South Jersey Publishing Co., 135 N.J. 53, 64, 637 A.2d 1261 (1994).[3]
*500 Here, however, the Commission is required by law to publish a report reflecting the fiscal transactions of its health plan program for the proceeding year "and stating other facts pertaining to the plan." N.J.S.A. 52:14-17.27. It cannot seriously be argued that the Commission can prepare such an annual report without a compilation of the aggregate premium payments made by each participating employee as well as the corresponding aggregate claim payments made by the Commission through its administrators to participating employees. Thus, the raw data concerning premium payments and claims experience necessarily must be made, maintained or kept on file by the Commission or its administrators. We stress that the Board requests only the aggregate amount of claim dollars paid; it does not seek a disclosure of the names of the employees or confidential information about the nature of the claims themselves. See N.J.A.C. 17:9-1.2(b) (all matters relating to "coverage of individual participants and their families" and "individual files" are deemed confidential by the Commission "where no official purpose or reason for inspection is indicated").[4]
The undisputed facts support Judge Weiss' finding that the aggregate claims data is maintained and kept "on file." Ms. Chiacchio, Secretary of the Commission, acknowledged that the Commission receives summaries from Blue Cross/Blue Shield and Prudential on claims paid by the administrators. She also acknowledged that all claims-data information is kept by the administrators in the computerized master file. In their deposition testimony, account executives from both Blue Cross/Blue Shield and Prudential corroborated Ms. Chiacchio's testimony, stating that the claims information is collected, filed by them, and available to participating employees seeking such data.
*501 Asbury Park Press, Inc. v. State, Dep't of Health, 233 N.J. Super. 375, 558 A.2d 1363 (App.Div.), certif. denied, 117 N.J. 646, 569 A.2d 1344 (1989), on which the Division relies, is distinguishable. There, the State Department of Health employed a consultant who prepared a "spread sheet" analyzing data derived from the auditing of the financial sheets of State hospitals to aid the Commissioner of Health in her report to the Health Rate Setting Commission during the rate-fixing process under N.J.S.A. 26:2H-4.1. 233 N.J. Super. at 378-79, 558 A.2d 1363. Affirming substantially for the reasons expressed by the trial judge, we held that the "spread sheet" was not required by N.J.S.A. 26:2H-4.1 to be made, maintained or kept on file. 233 N.J. Super. at 381, 558 A.2d 1363. Nevertheless, we carefully distinguished between the underlying data utilized to prepare the spread sheet and the spread sheet itself. We held that although the analysis was not a public record, the underlying data was required by law to be made, maintained and kept and therefore constituted a public record: "We agree with [the trial judge] that when the Department made available the basic data it disclosed all that was required." Id. at 385, 558 A.2d 1363 (emphasis added). Here, the Board does not seek a "spread sheet" or analysis prepared by a consultant; it simply demands the basic data concerning the claims history of its employees for a determinant period of time.
The unique factor implicated here is that the raw data concerning the claims history of the Board's employees is computerized, rather than being readily available by the inspection or copying of paper records. However, the fact that the data is incorporated into a computerized record-keeping system, rather than in a file cabinet, cannot be dispositive. Because the Commission and its administrators choose, for purposes of administrative expediency, to computerize the raw data, does not make the data any less a public record.
The real questions, as Judge Weiss properly observed, are whether retrieving the claims-data information from the computed *502 system for a single employer is "feasible," and if so, who should pay for the cost of retrieval.
Judge Weiss' finding that retrieval of the information was "feasible" is well-founded by the undisputed facts. Prudential can extract the claims-data information by simply feeding the social security numbers of the Board's employees into the State Health Benefits Program's master file, and sorting and retrieving the data being sought. Similar retrieval procedures had been followed by Blue Cross/Blue Shield. Each of the representatives from Blue Cross/Blue Shield and Prudential was able to estimate the approximate cost of retrieving and creating printouts of the requested information.
The Right-to-Know Law does not address the question of who should bear the cost of retrieving computerized public records. It provides that public records may be inspected, copied by hand or copied upon the payment of such price as "established by law." N.J.S.A. 47:1A-2. Also, our Supreme Court has held that the public entity has the right to establish "reasonable time and place restrictions on the terms of access." Techniscan, 113 N.J. at 237, 549 A.2d 1249. In our view, in the unique case where the public entity must "retrieve" data from a central computer bank, it may also impose the reasonable cost of retrieval and printout costs upon the person or entity seeking the data. The Board agrees to pay such reasonable costs, and Judge Weiss has so ordered.

III
We also conclude that the computerized claims data constitutes a public record under common-law principles. We so hold by adopting Judge Levy's analysis in Higg-A-Rella, where he determined that the Essex County Tax Board's electronic tax assessment records fell within the definition of common-law public records. Higg-A-Rella notes the "very broad" common-law definition of public record as including "almost every document recorded, generated, or produced by public officials, whether or not *503 `required by law to be made, maintained or kept on file' as required under [the Right-to-Know Law]." 276 N.J. Super. at 188, 647 A.2d 862. Higg-A-Rella reasons that "by preparing and maintaining a consolidation of the various municipal assessment lists, the county board created a public record." Ibid. Further, the electronic tax assessment records were "used by the board as an expeditious way to print any particular official municipal assessment list." Ibid. Importantly, Higg-A-Rella stresses that "availability of such a record should not be limited by its technological form.... It has long been our policy to respect and recognize advances in technology." Id. at 189, 647 A.2d 862. See also, Atlantic City Convention Ctr. Auth., 135 N.J. at 64, 637 A.2d 1261 ("[t]hat our previous definition of a common-law record was drawn from sources that spoke in terms of traces of ink on paper does not limit its scope. The essence of the common law is its adaptability to changing circumstances").
Higg-A-Rella's reasoning applies here. There is no question that the Board has a "personal" or "particular" interest in the aggregate premiums and claims data concerning its own employees. Id. 135 N.J. at 59, 637 A.2d 1261. Also, the aggregate data information is a written memorial, necessary to be kept by the Commission and its administrators to carry out its duties under the statutory State Health Benefits Program Act, pursuant to N.J.S.A. 52:14-17.25 to -17.45. Computerizing the claims data provides a convenient means for the Commission and its administrators to collect the data for the preparation of the Commission's annual report or for any other administrative purpose.
Of course, once a court determines "that a party has both an interest and a need for a document, the court must engage in a balancing process `concretely focused upon the relative interests of the parties in relation to [the] specific materials.'" Atlantic City Convention Ctr. Auth., 135 N.J. at 60, 637 A.2d 1261 (quoting McClain v. College Hosp., 99 N.J. 346, 361, 492 A.2d 991 (1985)). Such a process is "flexible and adaptable to different circumstances and sensitive to the fact that the requirements of confidentiality *504 are greater in some situations than in others." McClain, 99 N.J. at 362, 492 A.2d 991.
Here, the Board's need for the data cannot be questioned; it is essential in aiding the Board in making a meaningful policy decision concerning employee-health costs in an attempt to solve its pressing fiscal difficulties. The Commission is simply being asked to retrieve the aggregate data from a computerized data base. The time expenditure in retrieving the data is not substantial, and the financial cost shall be absorbed by the Board. There is no breach of confidentiality implicated, since the Board seeks only the disclosure of aggregate dollar numbers for the pertinent time period. The balancing process favors the Board.
Affirmed.
NOTES
[1] The administrative appeal has been placed on the inactive list by the OAL pending disposition of this appeal.
[2] City of Vineland v. State Health Benefits Comm., Docket No. TYP-7258-92 S (1992).
[3] The court in Higg-A-Rella did find that although the computer tape was not a public record under the Right to Know Law, it did constitute a public record under common law principles. See infra.
[4] The 1990 annual report, submitted to us, prepared by the Commission pursuant to N.J.S.A. 52:14-17.27, shows only the number of employees covered, the number of claims processed, the Commission's balance sheet, investments, and other financial information concerning the Commission's fiscal activities during the year.