678 A.2d 660

THE BOARD OF EDUCATION OF NEWARK, A BODY CORPORATE ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY; EUGENE C. CAMPBELL, EXECUTIVE SUPERINTENDENT OF SCHOOLS OF THE BOARD OF EDUCATION OF NEWARK; AND EUGENE C. CAMPBELL, INDIVIDUALLY, PLAINTIFFS–APPELLANTS, v. NEW JERSEY DEPARTMENT OF THE TREASURY, DIVISION OF PENSIONS; MARGARET M. MCMAHON, DIRECTOR OF DIVISION OF PENSIONS, ACTING SECRETARY OF THE STATE HEALTH BENEFITS COMMISSION AND/OR CUSTODIAN OF RECORDS; SAMUEL F. CRANE, NEW JERSEY STATE TREASURER; WILLIAM G. SCHEUER, COMMISSIONER OF THE DEPARTMENT OF PERSONNEL AND MERIT SYSTEM BOARD, DIVISION OF PENSIONS; SAMUEL F. FORTUNATO, COMMISSIONER OF THE DEPARTMENT OF INSURANCE; PATRICIA A. CHIACCHIO, SECRETARY, STATE HEALTH BENEFITS COMMISSION AND AS CUSTODIAN OF RECORDS, STATE HEALTH BENEFITS COMMISSION; JOHN DOE (A FICTITIOUS INDIVIDUAL), CUSTODIAN OF RECORDS, STATE HEALTH BENEFITS COMMISSION, DEFENDANTS–RESPONDENTS.

Argued January 16, 1996—Decided July 15, 1996.

*Mark J. Fleming,* Assistant Attorney General, argued the cause for appellants (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Sue E. Kleinberg,* Deputy Attorney General and *Michael J. Haas,* Senior Deputy Attorney General, on the briefs).

*Michael D. Bross* and *Adam H. Zipkin* argued the cause for respondents (*Bross, Strickland, Cary, Shapiro, Grossman and Icaza,* attorneys; *Sheldon Bross,* of counsel; *Michael D. Bross* and *Adam H. Zipkin,* on the briefs).

The opinion of the Court was delivered by

STEIN, J.

Respondent, the Board of Education of Newark (Board),[1] is a participating employer in the State Health Benefits Plan (Plan). In 1991, the Board requested that appellant, the State Health Benefits Commission (Commission), provide it with information on

---

[1] On July 12, 1995, the Department of Education took over the Newark Board of Education, creating the State-operated School District of the City of Newark. The Newark Board of Education, the named party-in-interest in this matter, no longer exists as a legal entity. In response to the inquiry of this Court, we have received the certification of the State District Superintendent and correspondence from the Acting Internal Counsel of the State-operated School District stating that the State-operated District continues to have an interest in obtaining the information that is the subject of this litigation. Accordingly, those officials have requested that this Court decide the matter on its merits. In the interest of clarity, we continue to refer to "the Board" in this opinion, instead of its successor.

medical claims paid by the Plan on behalf of the Board's employees. The Commission denied the request and the Board brought this action under the Right–to–Know Law, *N.J.S.A.* 47:1A–2, and under the common-law right to inspect public documents. The Law Division granted summary judgment to the Board on both grounds, and the Appellate Division affirmed. 279 *N.J.Super.* 489, 653 *A.*2d 589 (1995). We granted leave to appeal. 142 *N.J.* 440, 663 *A.*2d 1351 (1995).

I

The Plan is a self-insured program that provides health insurance to workers employed by participating public entities, including local governments and their subdivisions. It is managed by the Commission, which functions within the Division of Pensions of the Department of the Treasury. Private health insurance companies, Blue Cross/Blue Shield and Prudential Insurance Company, administer the Plan under contract with the Commission. Participation in the Plan by local government employers is voluntary. The Plan is said to be "community-rated," which means that the risk is analyzed and the premiums are set based on the overall loss experience of all the participants, instead of calculating different premiums for each employer based on its individual risk. *See City of Vineland v. State*, 95 *N.J.A.R.*2d 275, 277 (1995) (discussing Plan's community-rating system); *see generally In re Blue Cross & Blue Shield*, 239 *N.J.Super.* 434, 439, 571 *A.*2d 985 (App.Div.1990) (explaining community-rating concept).

In fiscal 1990, the year preceding the Board's request for information, the Plan covered over 270,000 public workers employed by 912 local government employers and the State. Premiums are paid by participating employers to the Division of Pensions. Claims are paid by the Plan's private administrators, which are reimbursed by the State. The individual employees' records are maintained by claims administrators at Blue Cross/Blue Shield and Prudential in a computerized data base. The Commission has access to the data base by modem. The files are listed by the

social security numbers of the individual employees, and are assigned a code denominating the file as belonging either to a State or local government employee. The data base is not otherwise subdivided and the individual computer files do not indicate to which employer a particular employee belongs.

During the 1990–91 school year, the Board paid the Division of Pensions more than $25,000,000 in premiums for health insurance coverage for its employees. Currently, the cost exceeds $40,000,-000. Counsel represents that, other than salaries, health benefits constitute the largest single expenditure in the Board's budget. On May 21, 1991, the Board wrote the Division asking for various financial statistics concerning the Board's participation in the Plan, including premiums paid by the Board, claims paid for Board employees, and administrative charges paid by the Board. The Board sought the information so that it could determine whether its continued participation in the Plan was an effective use of its funds allocated to employee health benefits. The Commission denied the Board's requests. With regard to the benefits paid, the Commission stated: "The claims experience of individual participating employers is not available."

The Board brought this action in lieu of prerogative writ to compel the production of the requested information. The complaint alleges that the Board has a right to the information under New Jersey's Right–to–Know Law, N.J.S.A. 47:1A–2, and under the common-law right to inspect public documents. In the interim, the Commission has agreed to provide only the information concerning the premiums paid by the Board.

Initially, the Law Division denied cross-motions for summary judgment and called for discovery on the issue of the feasibility and cost of extracting the Board's claims experience data from the master data base of all employees covered by the Plan. Depositions were taken of Prudential and Blue Cross/Blue Shield personnel involved in administering the Plan. The facts that emerged are not in dispute.

The testimony established that extracting the claims history of individual employers from the master data base is feasible. To enable the private administrators to extract from the data base the claims paid for Board employees, the Board must supply a computer tape containing all of its employees' social security numbers. A computer program would be written that would search the master data base for the individual files that contain a social security number appearing on the Board's list. The program would then extract the claims paid for each individual and add them together to generate the total amount of claims paid for all Board employees. The confidentiality of the individual records would be preserved, because only the total claims figure would be supplied to the Board.

Indeed, the Law Division found that both Prudential and Blue Cross/Blue Shield have produced that type of report for other employers in the past, and that writing the necessary program to extract the information is a routine matter. Claims reports are generated for corporate accounts on a regular basis. Until 1991, claims reports were prepared for participating public employers in the Plan as well. As examples, the court noted reports that had been generated for AT & T and for the County of Bergen. The court found that the private administrators stopped providing claims history reports only because a 1991 modification of their contracts with the Commission prohibited them from doing so.

The record contains differing estimates of the cost and reliability of the finished report. A representative of the Commission testified that the cost would be $6,000 per 500 employees and that the accuracy of the result would be impaired by erroneous social security numbers and turnover in the Board's workforce. Prudential's computer systems manager assigned to the Plan estimated an aggregate cost of $10,500 for the period from the beginning of the 1989 school year to the date of the request in May 1991 covering only the claims records administered by Prudential. The Blue Cross/Blue Shield account executive for the Plan testified

that, prior to 1991, claims history reports had been produced for other employers at a charge of $1,000 per month of claims.

Based on the augmented record, the Law Division held that it was "feasible" for the Commission to produce the data, "subject to the Board reimbursing the producing party [for] the cost of reproducing the information." The court found that the Commission was required to preserve the information to carry out its statutorily imposed duty to prepare an annual report. *See* *N.J.S.A.* 52:14–17.27. Therefore, the court concluded that the information was "required by law to be made, maintained or kept on file," *N.J.S.A.* 47:1A–2, and thus subject to disclosure under the Right-to-Know statute. The court also held that the information should be disclosed under the common-law right to inspect public documents, because the Board had a legitimate interest in the information that outweighed any interest in withholding it. Accordingly, the court granted summary judgment to the Board on both the statutory and common-law grounds. Summary judgment was denied with regard to the information concerning the administrative costs the Board had paid, due to unresolved issues of fact.

The Appellate Division granted leave to appeal the interlocutory order and affirmed on essentially the same grounds relied on by the Law Division. 279 *N.J.Super.* 489, 653 *A.2d* 589. Before this Court, the Commission argues that the Board's claims history does not exist as a distinct document or compilation and therefore that information cannot be subject to the common-law or statutory rights of inspection. The Commission claims that neither the common law nor the Right-to-Know Law can be construed to compel it to compile new information when existing records are not responsive to a plaintiff's needs. The Commission maintains that forcing it to extract the claims history for individual employers would constitute an unfair burden on a public entity and impair the efficient administration of the Plan.

The Board claims that the real reason the Commission refuses to provide information on claims paid is to discourage participating employers from leaving the Plan. In that connection, the Commis-

sion confirms that if it is required to provide claims experience information to participating employers on demand, the employers whose workers are better health risks than the average for the "community-rated" pool will choose to leave the Plan and seek lower-cost insurance elsewhere. That would leave the Plan with participants who are poorer risks, and would jeopardize the program's affordability.

The Board asserts that it has a compelling interest in the information that it seeks. It argues that the rule against requiring public entities to produce or compile new records should not be inflexibly applied. The burden on the Commission would be minimal, the Board claims, noting that the private administrators have produced similar reports for other clients in the past. The State District Superintendent[2] has certified to this Court that the Board is willing to absorb the cost of extracting the information from the master data base.

The Commission also challenges the jurisdiction of the Law Division over this matter. The Commission claims that under *Rule* 2:2–3(a)(2), the Board was required first to exhaust its administrative remedies and then to appeal directly to the Appellate Division from the state agency's final disposition. The Commission notes that another participating municipal employer seeking similar medical claims history information from the Plan has pursued its request before the Office of Administrative Law. *See City of Vineland, supra,* 95 *N.J.A.R.*2d 275.

## II

■ The Right–to–Know statute extends only to documents that are "required by law to be made, maintained or kept on file." *N.J.S.A.* 47:1A–2. That requirement " 'has been strictly construed.' " *Higg–A–Rella, Inc. v. County of Essex,* 141 *N.J.* 35, 44, 660 *A.*2d 1163 (1995) (quoting *Home News Publishing Co. v. State,*

---

[2] *See supra* note 1.

224 *N.J.Super.* 7, 11, 539 *A.*2d 736 (App.Div.1988)). Last term, in *Higg–A–Rella, supra,* we discussed computerized records and their status as Right–to–Know documents. *Higg–A–Rella* was decided several months after the Appellate Division ruled in this case, and thus the lower courts were without the guidance our opinion might have provided.

In concluding that the Board's claims experience is a Right–to–Know document, both lower courts relied on the fact that the New Jersey State Health Benefits Program Act requires that the Commission prepare an annual report "showing the fiscal transactions of the program for the preceding year and stating other facts pertaining to the plan." *N.J.S.A.* 52:14–17.27. Clearly the annual report itself is a Right–to–Know document. However, the Health Benefits Programs Act does not require that the annual report list the claims paid for each employer participating in the Plan. In fact, the annual report contains only aggregate financial figures for all covered employees and employers. There is no need for the Commission to compile the claims histories of each participating employer to fulfill its statutory duties with regard to the report.

Therefore, the information that the Board ultimately seeks, the amount of claims paid on behalf of its own employees, cannot constitute a Right–to–Know document because it is not required by law to be "made, maintained or kept on file." *N.J.S.A.* 47:1A–2. However, the status of the unsegregated data of individual claims paid is a different question. Maintaining the data on the individual claims paid is obviously necessary to prepare aggregate figures for the annual report, and a computer program could extract the Board's claims experience from the raw computer records of individual employees. The question is whether the Commission's need to preserve the individual claims records in order to produce the annual report brings the individual records within the ambit of the Right–to–Know Law.

The courts below reasoned that, because the Commission was required to report its total claims paid in the annual report,

records of the individual claims were required to be made and, therefore, were Right–to–Know records. We need not rule on whether information that is created incidentally to the production of a Right–to–Know document is itself covered by the Right–to–Know Law. *But see Higg–A–Rella, supra,* 141 *N.J.* at 44, 660 *A.*2d 1163 (holding that computerized tax records were not Right–to–Know documents because they were " 'merely a "convenient means" by which the county board can perform its mandated functions' ") (quoting *Higg–A–Rella, Inc. v. County of Essex,* 276 *N.J.Super.* 183, 188, 647 *A.*2d 862 (App.Div.1994) (quoting *Atlantic City Convention Ctr. Auth. v. South Jersey Publishing Co.,* 135 *N.J.* 53, 64, 637 *A.*2d 1261 (1994))); *Atlantic City Convention Ctr., supra,* 135 *N.J.* at 63–64, 637 *A.*2d 1261 (holding that audio tape of Convention Center Authority executive session was not Right–to–Know document where tape was made to assist in preparation of official minutes); *Asbury Park Press, Inc. v. State,* 233 *N.J.Super.* 375, 380–81, 558 *A.*2d 1363 (App.Div.) (holding that financial analysis prepared to assist public official in performing statutory duties was not Right–to–Know document), *certif. denied,* 117 *N.J.* 646, 569 *A.*2d 1344 (1989).

That issue need not be reached because, after the Appellate Division issued its opinion, the Legislature amended the Right–to–Know Law to provide that persons seeking access to records "maintained by a system of data processing" are entitled only to printed copies of those records. *L.* 1994, *c.* 140, § 8 (codified at *N.J.S.A.* 47:1A–2.1). Relying on the Legislature's statement that the amendment was intended to clarify the existing law, we have held that the amendment applies retroactively to pre-enactment requests to inspect public records. *Higg–A–Rella, supra,* 141 *N.J.* at 45, 660 *A.*2d 1163 (citing Assembly State Government Committee, *Statement to Assembly Bill No. 972 (committee amendments),* at 3 (May 2, 1994)). Therefore, even if the individual claims histories were subject to the Right–to–Know Law, only printed copies of that specific data could be compelled to be produced.

Obviously, a printed list of individual claims histories for all the employees in the Plan is not what the Board seeks. Indeed, the Board has argued that compiling the needed information by hand from paper records would constitute an insurmountable burden. Only access to the computerized data from which the Board's own claims experience may be extracted will satisfy the Board's needs. That access is excluded from the mandate of the Right-to-Know Law by *N.J.S.A.* 47:1A-2.1. Accordingly, we hold that the Board is not entitled to the information it seeks under the Right-to-Know Law.

## III

Several of our opinions set forth the legal principles governing the common-law right to inspect public records. *See, e.g., Southern New Jersey Newspapers, Inc. v. Township of Mt. Laurel,* 141 *N.J.* 56, 660 *A.*2d 1173 (1995); *Higg–A–Rella, supra,* 141 *N.J.* 35, 660 *A.*2d 1163. Those principles need not be restated in detail to resolve this appeal. The common-law right to inspect extends to any document "made by public officers in the exercise of public functions," *Nero v. Hyland,* 76 *N.J.* 213, 222, 386 *A.*2d 846 (1978), and thus encompasses a far broader range of documents than the Right-to-Know Law. *Higg–A–Rella, supra,* 141 *N.J.* at 46, 660 *A.*2d 1163; *Atlantic City Convention Ctr., supra,* 135 *N.J.* at 60, 637 *A.*2d 1261. Computerized records may be common-law public records and subject to inspection and copying in electronic form. *Higg–A–Rella, supra,* 141 *N.J.* at 47, 660 *A.*2d 1163.

The common-law right to inspect is subject to two qualifications:

First, the person seeking access must establish an interest in the subject matter of the material. Second, the citizen's common-law right to gain access to [common-law] public records requires a *balancing* of interests.... [A] plaintiff's common-law right of access must be balanced against the State's interest in preventing disclosure.

[*Id.* at 46, 660 *A.*2d 1163 (internal quotations and citations omitted) (first alteration in original).]

That the process be "'flexible and adaptable to different circumstances'" is crucial to the correct application of the common-law right. *Techniscan Corp. v. Passaic Valley Water Comm'n,* 113 *N.J.* 233, 236, 549 *A.*2d 1249 (1988) (quoting *McClain v. College Hosp.,* 99 *N.J.* 346, 362, 492 *A.*2d 991 (1985)); *accord Home News v. State,* 144 *N.J.* 446, 455, 677 *A.*2d 195 (1996); *Higg-A-Rella, supra,* 141 *N.J.* at 46–47, 660 *A.*2d 1163.

■ We are essentially in accord with the lower courts' analysis of the interests presented by the Board's attempt to gain access to information regarding its claims experience. Clearly, the records of claims paid are made by public officials in the exercise of their duties in administering the Plan and thus constitute common-law public records. That the Board has an interest in the information it seeks cannot reasonably be disputed. The Board's responsibility for the education of the school children of Newark and the expenditure of a substantial portion of the public funds available to it for health insurance for Board employees elevates the Board's interest in its claims history to one of public importance.

The Commission has alleged no interest in preventing disclosure that would outweigh the Board's need to obtain the information. The courts below correctly found no genuine dispute that producing the Board's claims experience is feasible. No confidential information need be released. The Board is prepared to reimburse the Plan's private administrators for the expense of creating and running the necessary computer programs. The Commission's concern that better-than-average-risk employers will leave the Plan is not a legitimate basis to withhold information from the Board. The Health Benefits Programs Act provides that participation in the Plan is voluntary. *See N.J.S.A.* 52:14–17.37; *N.J.A.C.* 17:9–1.5. The Commission may not compel participants to remain in the Plan by depriving them of the information necessary to make an informed decision.

Thus, the common-law balancing of the interests at stake weighs overwhelmingly in favor of disclosure. The Commission argues that as a matter of law it cannot be compelled to create a new

record under the common-law right of inspection. The Commission relies on dictum in *Southern New Jersey Newspapers, Inc. v. Township of Mt. Laurel,* 141 *N.J.* 56, 69, 660 *A.*2d 1173 (1995), in which we observed that "the general rule is that public agencies are not required to produce new information even if the documents available under the Right-to-Know Law and the common law are unresponsive to a citizen's inquiry." We went on to note, however, "that rigid adherence to that general rule might not necessarily be appropriate in all cases." *Ibid.*

However, we reject the premise of the Commission's argument that permitting the Board to retrieve its claims history would require the Commission to generate new information. Rather, the testimony of the Blue Cross/Blue Shield and Prudential representatives demonstrates that the process of retrieving the Board's claims information is better characterized as a selective copying from the Commission's existing data base. The cost of extracting the information will be borne by the Board and it will be performed by the private administrators in the same manner as for their private clients. No added burden will be placed on the Commission. Furthermore, to the extent that aggregating the claims history of Board employees may be said to generate a new document, we believe that the minimal amount of data created is justified by the overwhelming balance of the interests in favor of the Board receiving the information it needs.

IV

The Appellate Division declined to reach the merits of the Commission's jurisdictional claim. The court noted that an "exhaustive factual record," *supra,* 279 *N.J.Super.* at 497, 653 *A.*2d 589, had been developed before the Law Division. It found that dismissing the case on procedural grounds only to duplicate that effort before the Office of Administrative Law would result in substantial delay and waste of judicial resources and public funds. We find that the jurisdictional question is moot with regard to any issues decided by the Appellate Division as a matter of law and

affirmed by this Court. Because those are the only issues properly before this Court, we need not address the Commission's jurisdictional argument further. Moreover, the Commission has agreed that the information concerning the premiums paid by the Board will be turned over to it. Thus, the only matter still pending before the Law Division concerns factual questions regarding the administrative costs paid by the Board. That relatively minor issue cannot justify forcing the parties to begin this litigation anew before the Office of Administrative Law.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.