| **Matter of Pegram v Metropolitan Transp. Auth.** |
|:---:|
| 2024 NY Slip Op 32350(U) |
| July 9, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No.: 150524/2023 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. JOHN J. KELLEY**

*Justice*

PART **56M**

-----------------------------------------------------------------------------------X

In the Matter of

JOHN B. PEGRAM,

Petitioner,

- v -

METROPOLITAN TRANSPORTATION AUTHORITY,

Respondent.

-----------------------------------------------------------------------------------X

INDEX NO. 150524/2023

MOTION DATE 05/15/2024

MOTION SEQ. NO. 001

**DECISION, ORDER, and JUDGMENT**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39. 40, 41, 42, 43, 44, 45, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72

were read on this motion to/for _____ARTICLE 78 (BODY OR OFFICER)_____ .

In this CPLR article 78 proceeding, the petitioner seeks judicial review of a September 27, 2022 Metropolitan Transportation Authority (MTA) records access appeal officer's determination denying his administrative appeal from an August 18, 2022 MTA decision, made upon reconsideration, that denied, in part, his February 25, 2022 request for agency records pursuant to the Freedom of Information Law (Public Officers Law § 84, *et seq*.; hereinafter FOIL). The MTA opposed the petition on the ground that the records sought by the petitioner were exempt from disclosure pursuant to Public Officers Law §87(2)(g)(i-iii) (inter-agency or intra-agency materials), §87(2)(f) (records that, if disclosed, could endanger the life or safety of any person), and § 87(2)(d) (trade secrets). In an interim order dated August 21, 2023, this court granted the petition only to the extent of directing the MTA to produce, for in camera inspection, all responsive records that it had withheld or redacted pursuant to one of those exemptions, along with a privilege log identifying each of the records, so that the court could determine whether the MTA's stated grounds for exemption from FOIL disclosure were legally

proper and supportable. On October 19, 2023, the parties entered into a written stipulation, pursuant to which they settled several of the petitioner's claims, and agreed that some of the redactions involved trade secrets. The stipulation, however, also limited the petitioner' request for judicial review to the question of whether portions of a particular report generated by an MTA vendor that had been redacted pursuant to FOIL's trade secret exemption nonetheless must be disclosed by virtue of Public Officers Law § 87(5)(b), which places restrictions on certain contracts entered into by a public agency. The court concludes that Public Officers Law § 87(5)(b) does not override the trade secrets exemption set forth in Public Officers Law § 87(2)(d), nor does it require the MTA to produce documents, or portions thereof, that contain trade secrets. The court thus denies that branch of the petition seeking to annul that determination, and dismisses that portion of the proceeding. The remainder of the petition is denied as academic in light of the parties' stipulation of settlement.

In his request, the petitioner had sought "[t]he underlying, unpub[l]ished . . . report(s) of AECOM, USA, and the MTA for the Interborough Express feasibility study," referable to a proposed light rail project that would connect parts of Queens to parts of Brooklyn, as well as information concerning battery rail cars that had been the subject of an agreement between the MTA and rapid transit vehicle manufacturer Alstom to test batteries in electric multiple unit rail cars on the Long Island Rail Road's Oyster Bay Branch. Although the MTA produced numerous documents in response to the petitioner's request, the MTA, in its August 18, 2022 determination, continued to withhold or redact numerous documents as exempt from disclosure pursuant to Public Officers Law §87(2)(g)(i-iii), which allows an agency to deny access to records or portions thereof where those record constitute inter-agency or intra-agency materials, and pursuant to Public Officer's Law §87(2)(f), referable to records that, if disclosed, could endanger the life or safety of any person. In addition, the MTA asserted that some of the records were exempt from disclosure as trade secrets pursuant Public Officers Law § 87(2)(d).

**150524/2023   PEGRAM, MATTER OF JOHN B vs. METROPOLITAN TRANSPORTATION AU**        **Page 2 of 6**
  **Motion No.  001**

2 of 6

[* 2]

Although the parties' October 19, 2023 stipulation of settlement requested the court to withdraw its directive that documents must be produced for an in camera inspection on the ground that the parties deemed it unnecessary, the court, in a second interim order dated April 3, 2024, adjourned the return date of the petition until May 15, 2024, and again directed the MTA to produce the subject records for in camera inspection. The court concluded that, to evaluate the applicability of Public Officers Law § 87(5)(b) in the first instance, it had to review those records. On May 3, 2024, the MTA provided the court with those records, consisting of the M7 LIRR BEMU [Battery Electric Multiple Unit] Project Final Feasibility Report that had been prepared by Alstom and a Preliminary Hazard List, also apparently prepared by Alstom.

Public Officers Law § 87(5)(b), enacted as L 2008, ch 223, § 3, provides as follows:

> "No agency shall enter into or renew a contract *for the creation or maintenance of records* if such contract impairs the right of the public to inspect or copy the agency's records"

(emphasis added). The petitioner contends that MTA entered into a contract with Alstom that, insofar as it contained trade secrets, or might generate other documents that contained trade secrets, impaired his right to inspect or copy relevant MTA records. MTA counters that this statutory provision simply is inapplicable to this dispute. The court agrees with the MTA.

As the Court of Appeals has explained,

> "'[W]hen presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the [l]egislature' (*Samiento v World Yacht Inc*., 10 NY3d 70, 77-78 [2008], quoting *Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). Inasmuch as 'the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof' (*Majewski v Broadalbin-Perth Cent. School Dist*., 91 NY2d 577, 583 [1998]; *see Matter of Avella v City of New York*, 29 NY3d 425, 434 [2017]). As we have repeatedly explained, 'courts should construe unambiguous language to give effect to its plain meaning' (*Matter of DaimlerChrysler Corp*., 7 NY3d at 660). 'Absent ambiguity the courts may not resort to rules of construction to [alter] the scope and application of a statute' because no such rule 'gives the court discretion to declare the intent of the law when the words are unequivocal' (*Bender v Jamaica Hosp*., 40 NY2d 560, 562 [1976]; see also McKinney's Cons Laws of NY, Statutes § 94, Comment ['(t)he (l)egislature is presumed to mean what it says'])"

**150524/2023   PEGRAM, MATTER OF JOHN B vs. METROPOLITAN TRANSPORTATION AU**          Page 3 of 6
**Motion No.  001**

3 of 6

(*Kuzmich v 50 Murray St. Acquisition, LLC,* 34 NY3d 84, 91-92 [2019]). Public Officers Law § 87(5)(b) solely and unambiguously applies to contracts for the "creation or maintenance of records," that is, a contract between a public agency and an information technology vendor, or similar entity, that supplies services or equipment for the generation, collection, sorting, processing, storage, maintenance, and retrieval of written or recorded information. The contract between Alstom and the MTA was not for the creation or maintenance of records but, rather, was for the preparation of a feasibility study for the renovation of a branch of the Long Island Rail Road employing certain recently developed railroad and rail engine technology. Hence, Public Officers Law § 87(5)(b) has no applicability to the instant dispute, and cannot be read to override the trade secrets exemption otherwise articulated in FOIL.

Even if the statutory text were ambiguous, and the court thus "'may examine the statute's legislative history'" (*Matter of DCH Auto v Town of Mamaroneck,* 38 NY3d 278, 292 [2022], quoting *Roberts v Tishman Speyer Props., L.P.,* 13 NY3d 270, 286 [2009]; *see Majewski v Broadalbin-Perth Cent. School Dist.* [1998]), the legislative history of Public Officers Law § 87(5)(b) supports the plain meaning of the text itself. In addition to reiterating the language of that subdivision verbatim, the Senate and Assembly sponsors of the underlying bill explained that, "[i]n general the legislation continues the intent and purpose of the State's Freedom of Information Law by enacting changes which recognize technology advances in the storage and collection of public records, and clarifies problems that have occurred related to certain sections of the law by requiring public access wherever possible while still maintaining protections against the invasion of Privacy" (NY State Senate Introducer's Memo, p 5, Bill Jacket, L 2008, ch 223, p 9; NY Assembly Introducer's Memo, p 2, Bill Jacket, L 2008, ch 223, p 12). Most of the bill that ultimately was enacted into law addressed the manner in which an agency was to evaluate its costs in retrieving records requested pursuant to FOIL, as well as the proliferation of records maintained in an electronic format. The package of amendments to FOIL that included

**150524/2023 PEGRAM, MATTER OF JOHN B vs. METROPOLITAN TRANSPORTATION AU** **Page 4 of 6**
**Motion No. 001**

4 of 6

the relevant subdivision also limited an agency's ability to deny a request for production based on the alleged "burdensomeness" of responding to the request. As relevant here,

> "[t]he key element of Section 3 of the bill would require an agency to 'provide records on the medium requested . . . if the agency can reasonably make such copy.' This requirement would clarify and confirm judicial decisions rendered over the course of years, those requiring that agencies make records available economically on tapes or disks, rather than photocopying [*see Szikszay v. Buelow*, 107 Misc. 2d 886 (1981) or by transferring data onto computer tapes or disks, instead of printing out as much as a million pages on paper at a cost of thousands of dollars [*see Brownstone Publishers, Inc. v. New York City Department of Buildings*, 166 AD2d 294 (1990)]. Section 3 also specifies that an agency cannot contract with any entity if the contract 'impairs the right of the public to inspect or copy the agency's records'"

(Memorandum of Dept of State Comm on Open Govt, Jul. 3, 2008, p 2, Bill Jacket, L 2008, ch 223, p 19).

In other words, Public Officers Law § 87(5)(b) is concerned only with contracts between an agency and an information technology vendor that would have a direct impact on the manner in which, and the ease with which, that agency could quickly and properly respond to FOIL requests. It has no applicability to the thousands of different contracts that agencies enter into, and have entered into, with private companies for the provision of equipment and services. Were the court to accept the petitioner's reasoning, Public Officers Law § 87(5)(b) would override and essentially swallow up any FOIL exemption otherwise applicable to *every agency contract* for the provision of *every type* of equipment or services, which would yield a preposterous result.

The petitioner's remaining contentions are without merit.

In light of the foregoing, it is,

ORDERED that the branch of the petition seeking judicial review of the respondent's September 27, 2022 determination confirming the denial of access to all or a portion of agency records consisting of the Alstom M7 LIRR BEMU Project Final Feasibility Report and Preliminary Hazard List on the ground that they contained trade secrets is denied, and the petition is otherwise denied as academic; and it is,

**150524/2023   PEGRAM, MATTER OF JOHN B vs. METROPOLITAN TRANSPORTATION AU**      **Page 5 of 6**
  Motion No.  001

5 of 6

ADJUDGED that the petition is thereupon dismissed.

This constitutes the Decision, Order, and Judgment of the court.

| | |
|---|---|
| **7/9/2024** | |
| **DATE** | **JOHN J. KELLEY, J.S.C.** |

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**150524/2023   PEGRAM, MATTER OF JOHN B vs. METROPOLITAN TRANSPORTATION AU**   **Page 6 of 6**
**Motion No.  001**

6 of 6